## MILLER v. DAYTON.

1. **Instructions**: ACTION BY ADMINISTRATOR: FAILURE OF DEFENDANT
   TO TESTIFY. In an action by an administrator for damages for the ma-
   licious killing of deceased, where the evidence was wholly circumstan-
   tial and consisted of distinct facts and circumstances having nothing of
   the character of personal transactions between the defendant and the
   deceased, the defendant is not rendered incompetent to testify as to the
   existence and true character of such facts and circumstances by section
   3639, Code; and an instruction that if the defendant had not satisfacto-
   rily explained the material circumstances and transactions appearing in
   evidence against him by other testimony, then the fact that he was not
   a witness in his own behalf may be considered in evidence against him,
   was proper.

2. ———: FAILURE TO PRODUCE WITNESS: PRESUMPTION. The law does
   not require a party to account for his failure to produce any witness, who
   mistakenly or corruptly might be willing to testify to facts explaining
   circumstances casting suspicion upon such party. Under the facts of this
   case an instruction that such failure might be considered by the jury as
   a circumstance against the defendant was erroneous.

3. ———: EVIDENCE: CONSPIRACY. The acts and declarations of a party
   alleged to be a co-conspirator, tending to establish the fact of a conspir-
   acy, are admissible in evidence although no conspiracy was alleged;
   and it is for the jury to determine from the whole testimony whether a
   conspiracy has been shown, and if not, then such testimony should be
   disregarded.

4. **Evidence**: IMMATERIAL. Evidence tending to show the fabrication of
   testimony by the defendant in order to avoid a criminal prosecution, al-
   though not prejudicial, was immaterial and irrelevant, and not admis-
   sible.

### *Appeal from Jefferson District Court.*

### THURSDAY, DECEMBER 15.

THE plaintiff, as administratrix of the estate of W. L. Miller,
deceased, brings this action to recover of the defendant dama-
ges for the alleged willfully and maliciously killing the said
W. L. Miller. There was a jury trial resulting in a verdict and
judgment for the plaintiff in the sum of $5,050. The defend-
ant appeals. The material facts are stated in the opinion.

*McJunkin & Henderson*, for the appellant.

*E. W. Stone*, and *Wilson & Kellogg*, for the appellee.

DAY, J.—The deceased was killed by a shot from a gun whilst walking along the highway with the plaintiff, his wife, on the evening of the 29th of August, 1877. The person who fired the fatal shot was concealed on the opposite side of the fence, on the north side of the road, behind a fallen tree top, covered with dried leaves, and affording complete protection from sight from the road. The surrounding trees and brush were so situated that in a very few steps the party could be completely out of sight from the fence. No one saw any person do the shooting. The evidence connecting the defendant with the offense is altogether circumstantial, some of the circumstances being testified to by the plaintiff herself. The defendant did not testify. The court instructed the jury as follows: "Under the law of this State, a defendant in a civil or criminal case may be a witness in his own behalf. Now the court instructs you that if you find there are material and important circumstances appearing in evidence against the defendant, and that you further find that defendant has not satisfactorily explained said circumstances by other evidence then the fact that he was not a witness in his own behalf may be considered in evidence against him, and you are to give it just such weight as it is entitled to when considered with the other evidence in the case."

The defendant insists that this instruction is erroneous, because the defendant was not a competent witness under the provisions of section 3639 of the Code. This section provides that no party to an action or proceeding shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, against the executor or adminis-

*Marginal note: 1. INSTRUCTIONS: action by administrator: failure of defendant to testify.*

trator of such deceased person. But this prohibition shall not extend to any transaction or communication as to which such executor or administrator shall be examined in his own behalf, or as to which the testimony of such deceased person shall be given in evidence. The evident purpose of this section is to close by the law the mouth of one party to a transaction or communication when the mouth of the other party thereto has been closed by death. If any transaction as contemplated in this section occurred between the defendant and the deceased, it was the shooting of the deceased. No one saw that transaction. No one gave direct testimony respecting it. It may be that under section 3639 of the Code, it would not be competent for the defendant to testify that he did not shoot the deceased. But the guilt of the defendant was sought to be shown, not by direct evidence that he shot deceased, but by proof of a number of direct facts and circumstances, occurring both before and after the homicide, having nothing of the character of a personal transaction between the defendant and the deceased. As to the existence and true character of these facts and circumstances the defendant is not rendered incompetent to testify by the provisions of section 3639 of the Code. It is evident that the court had reference to these facts and circumstances in the instruction under consideration. The court say: "If you find there are material and important circumstances appearing in evidence against defendant, and that the defendant has not satisfactorily explained said circumstances by other evidence, then the fact that he was not a witness in his own behalf may be considered in evidence against him." The instruction, as limited and qualified, is, we think, not erroneous.

II. The defendant was indicted and tried for the murder of the deceased. Upon the trial of the civil action the plaintiff 2. ——: failure to produce witness: presumption. introduced as a witness one Kelly, who testified that the defendant told him that Martha Dayton, his sister-in-law, testified upon the criminal trial that she saw the defendant's gun in the pantry in his house, at

the time she heard the report of the discharge which killed deceased. Respecting this the court instructed the jury as follows: "If you find from the evidence that the defendant had knowledge of the facts that said Martha Dayton would testify to—that at the time the gun was fired at the place of the homicide the defendant's gun was in his house and the defendant did not have it—and if the defendant has not introduced said witness, nor accounted for her absence, then you may consider such fact against the defendant, and you should give such circumstance just such weight as you think it entitled to when considered with the other evidence in the case." If the defendant knew that Martha Dayton *knew* where his gun was when the homicide was committed, and such knowledge was not equally in the possession of the plaintiff, then the jury might consider the fact that Martha Dayton was not introduced as a witness as a circumstance against the defendant, for the jury would have been authorized to infer that if the gun had been in the house, the defendant would have proved it, and that proof of the place in which the gun was would have been prejudicial to him. See the following authorities upon this point. *Turks v. Richardson*, 4 B. Monroe, 276; *State v. Cleaves*, 59 Me., 298; *Gordon v. The People*, 33 N. Y., 501 (508); *State v. Rosier*, 55 Iowa, 517.

There is an essential difference, however, between the defendant's knowing that Martha Dayton knew where the gun was at the time of the homicide, and his knowing that she would testify the gun was in his house at that time. The gun may not have been in the defendant's house, and still the defendant may have been innocent. Or the gun may have been in the defendant's house, and Martha Dayton may have had no knowledge respecting it. And yet, resting under a mistake, she may have been willing to testify to what she believed to be true, but which was false in fact, or, actuated by an undue zeal to shield her relative, she may have been willing to testify to what she knew to be false, or to what she did not know to be

Miller v. Dayton.

true.  Now, if the circumstances were such, there would be two potent reasons why this witness should not be introduced. *First*. It would be grossly dishonest knowingly to introduce a witness to testify to a known falsehood, or to a fact not known to be true, or to a matter respecting which it is known that the witness is mistaken.  *Second*. It might greatly prejudice the defendant's case if the mistake or the dishonesty of the witness should be detected.   Was it then incumbent upon the defendant, in order to prevent any adverse inferences from his failure to introduce Martha Dayton as a witness, to show that, notwithstanding the fact that Martha Dayton would swear that his gun was in the house, she was honestly mistaken as to the fact, or was willing willfully to testify to what she knew to be false, or did not know to be true?  We are of opinion that the law casts no such burden upon the defendant.  Such a rule would require a party to account for his failure to produce any witness, who, mistakenly or corruptly, might be willing to testify to facts  explaining circumstances casting suspicion upon such party.   We think the court erred in giving this instruction.

III.   Certain acts and declarations of Jefferson Dayton after the homicide was committed, were shown to the jury.  Respecting this testimony the court instructed the jury as follows: "It is claimed by the plaintiff that the defendant and his brother Jefferson Dayton were jointly engaged in the commission of said offense, and, after it was committed, that they were jointly engaged in preventing, or endeavoring to prevent, suspicion from attaching to the defendant, and to enable him to escape justice.   The court has permitted certain acts and statements of the said Jefferson Dayton, to go to the jury upon the theory that he and the defendant were conspirators as charged.   Now, if you should find that they were such conspirators, the acts and declarations of Jefferson Dayton, may be considered by you so far as they bear upon the question as to whether or not they were endeavoring

*[margin note: ——: evidence : conspiracy.]*

to divert suspicion from the defendant, and to prevent him being brought to justice, if you find that they did conspire for said purpose. But if you find no such conspiracy existed, then the acts or declarations of said Jefferson should not be considered against the defendant." In admitting this evidence, and in giving this instruction, it is claimed the court erred.

1. It is insisted that evidence of the acts and declarations of Jefferson Dayton was improperly admitted, because there was no proof of any conspiracy between the defendant and Jefferson Dayton. The law is that before the acts and declarations of an alleged conspirator in regard to the common design, as affecting his fellows, can be admitted, a foundation must be laid by proof sufficient in the opinion of the judge to establish *prima facie* the facts of conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact. 1 Greenleaf on Evidence, section 111; see, also, Wharton's Criminal Law, section 702. It is not, however, necessary that the evidence of conspiracy should be direct and positive. The proof of the combination, must, of necessity almost always be extracted from the circumstances connected with the transaction. Wharton's Criminal Law, section 2351, *The State v. Sterling*, 34 Iowa, 443. It is not practicable in this case to review all the evidence, and refer in detail to all the minute circumstances which tend to support the conclusion that a conspiracy was formed between the defendant and his brother Jefferson Dayton, as claimed by the plaintiff. In our opinion the evidence was at least proper to be laid before the jury, as tending to establish the fact of a conspiracy. If the evidence was of such a character it was sufficient to authorize the submission to the jury of the declarations of Jefferson Dayton.

2. It is insisted, further, that the declarations of Jefferson Dayton were improperly admitted, because there is no allegation in the petition that these parties entered into a conspiracy. The gravamen of this action is not the conspiracy, but the un-

lawful killing of Miller. The conspiracy is introduced merely as a means of establishing the principal fact which forms the foundation of the action. Under such circumstances it is not necessary that a conspiracy should be alleged.

3. It is claimed that if any conspiracy was entered into it terminated with the killing of Miller, and that the evidence of any act or declaration of Jefferson Dayton subsequent to that time is inadmissible. If, as claimed, however, the conspiracy also had for its purpose to prevent suspicion from attaching to the defendant, and to enable him to escape justice, the objects of the conspiracy were not fully completed when Miller was killed. See *Commonwealth v. Scott*, 123 Mass., 222; *Scott v. The State*, 30 Ala., 503.

Whatever the defendant himself may have done in the fabrication of evidence to prevent suspicion from attaching to him, or to avoid a prosecution, was proper to be shown to the jury and considered by them. Greenleaf on Evidence, section 37. And if another person conspired with him to assist in the accomplishment of this purpose, his acts and declarations, in furtherance of the common design, are, we think, admissible.

4. It is insisted that the court erred in the instruction above set out, in leaving the jury to determine whether a conspiracy existed. It is claimed that that question must be determined by the court. It is true the court must determine, in the first instance, whether there is sufficient *prima facie* evidence of a conspiracy to justify the submission to the jury of the acts and declarations of an alleged conspirator as evidence against his fellows. But, ultimately, it is for the jury to determine whether, upon the whole testimony, any conspiracy has been shown; and if they find that no conspiracy has been established, it is then their duty not to consider the acts and declarations which have been admitted of a supposed conspirator.

IV. Evidence was introduced tending to show that the

defendant, in order to avoid a criminal prosecution, fabricated **4. EVIDENCE**: evidence that he had been murdered. Evidence **immaterial.** was admitted of the declarations of his father when his hat, perforated with shot, was found, and of the conduct of his wife when the hat was shown to her. This evidence was probably not prejudicial to the defendant, but it was immaterial and irrelevant, and should not have been admitted.

For the error before considered the judgment is

REVERSED.