DAVID SAMPLES

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield September 27, 1887.*

EVIDENCE — *declarations and statements — as between co-conspirators.* The declarations or statements of one party shown to have been connected with another to do an unlawful act, to be admissible in evidence against such other party must not only have been made during the pendency of the criminal enterprise, but also in furtherance of its objects. A mere narrative to a stranger, even when related during the pendency of the criminal enterprise, but of a past event or occurrence, is as objectionable as if related after such enterprise has terminated. It is no part of the *res gestæ,* and is inadmissible as against his associate, who is alone upon trial.

WRIT OF ERROR to the Circuit Court of Logan county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. BLINN & HOBLETT, for the plaintiff in error:

The trial court had no right to prohibit a full cross-examination of the prosecuting witness, Emma Cole. *Tracy* v. *People,* 97 Ill. 103; *Sutton* v. *People,* 119 id. 250.

Before the declarations of an alleged co-conspirator, made in the absence of a defendant, can be received in evidence, it

must be shown, first, that there was a conspiracy to do an unlawful act; second, that the declarations were made while some act was being done in furtherance of such conspiracy, as explanatory of the act, so as to become *res gestæ*. Greenleaf on Evidence, sec. 94; 2 Best on Evidence, sec. 508, p. 860; Abbott's Trial Evidence, sec. 9, p. 190; 2 Wharton on Evidence, sec. 1206; *Insurance Co.* v. *Gleason,* 78 N. Y. 515; *Clawson* v. *State,* 14 Ohio St. 234; *Patton* v. *State,* 6 id. 470; 2 Starkie on Evidence, 406; Roscoe on Crim. Ev. 617; 2 Russell on Crimes, 697.

Mr. GEORGE HUNT, Attorney General, for the People:

The facts sought on cross-examination were immaterial, and not confined to matters shown in the direct examination.

There was no error in allowing Mary Ann Hammerton to testify to what Uriah Samples told her the defendant had said.

The evidence showed a concerted action,—in legal terms, a conspiracy to produce an abortion; and the statements made by Uriah were made during the continuance of this unlawful conspiracy. He purchased drugs for Miss Cole both before and after this conversation. All the cases cited by plaintiff in error agree that statements made by any one of the conspirators during the pendency of the criminal enterprise are admissible.

The law upon this point was correctly given to the jury, and it was their province to determine the facts, and it must be presumed that they did determine the facts in accordance with the law as given them by the court. *Railroad Co.* v. *Collins,* 56 Ill. 212; *Patton* v. *State,* 6 Ohio St. 470; *Clawson* v. *State,* 14 id. 238; Wharton on Evidence, sec. 1206.

Mr. ROBERT HUMPHREY, State's Attorney, also for the People:

A cross-examination of a witness about an immaterial matter, in order to disgrace him, for the purpose of discrediting his evidence, is not allowable. Wharton on Crim. Ev. sec. 472;

*Railroad Co.* v. *Williams*, 77 Ill. 354; *Hayward* v. *People*, 96 id. 492.

This was the evident·aim of the attempted cross-examination of Miss Cole, as it was not about the *res gestæ*, and did not tend to contradict anything the witness had testified to in chief.

The declarations of Uriah Samples admitted in evidence, came within the rule as to declarations of co-conspirators. *Gardner* v. *People*, 3 Scam. 90; *Railroad Co.* v. *Collins*, 56 Ill. 212; 1 Greenleaf on Evidence, (9th ed.) sec. 108, note.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

David Samples and Uriah Samples were jointly indicted by the grand jury of Logan county, for the statutory offence of attempting to produce an abortion upon the person of Lucy E. Cole. Uriah Samples was not arrested, but David Samples was tried under the indictment, in the circuit court of Logan county, and found guilty, and sentenced to the penitentiary for the term of one year.

Upon the trial, Lucy E. Cole testified that she was pregnant by David Samples; that he promised her that he would procure his brother, Uriah Samples, to bring her ergot, with which to produce an abortion; that Uriah Samples did deliver to her ergot, directing her how to take it; that she took the ergot as directed, but that it produced no result as desired; that David afterwards inquired of her whether she had taken the ergot, and what result it had produced, and when she informed him that she had taken it, but that it had produced no abortion, David replied that he would get her some more; that David did not get her any more ergot, but that Uriah did,—that he brought her two ounces of ergot about two weeks after he brought the first ergot to her, and Uriah then said that David told him to get that ergot and he would pay for it; that she afterwards saw David, and he asked her if it did her any good, and she told him no. The first time that Uriah delivered the

ergot to the witness was about the middle of March, and the last time was the last of March.

The People introduced Mary Ann Hammerton, whom the court permitted, over the defendant's objection, to testify that she had a conversation with Uriah Samples, at her house, in the month of March, in regard to the condition of Lucy E. Cole, and that Uriah then told her that he (Uriah) had got the medicine for Emma, (meaning Lucy E. Cole,) and that David Samples told him that if he (Uriah) would get the medicine, he (David) would pay for it.

David Samples testified in his own behalf, denying that he had ever promised Lucy E. Cole that he would get ergot or any medicine for her; denying that he ever got any medicine for her himself, and that he ever authorized or requested Uriah Samples to get any medicine for her.

There is no evidence, other than that of Lucy E. Cole and Mary Ann Hammerton, tending to prove that Uriah acted under the direction or procurement of David, and there being a direct conflict between the testimony of Lucy E. and David, that of Mary Ann Hammerton is of material advantage to the People, as corroborative of the evidence of Lucy E., and the question therefore is, was it competent?

It will have been observed that it is not pretended that Uriah was, at the time that he is alleged to have made the statement testified to by this witness, doing any act tending to produce an abortion, or to cause any one else to do so. He was not then purchasing medicine, directing medicine to be taken, or even carrying medicine for that purpose. His remarks were directed to a stranger, in nowise personally interested in the subject, and were simply and purely a narrative of something that he said had been done. "It is an established rule," says Phillips on Evidence, (vol. 1, Cowan, Hill & Edward's notes, p. 205,) "that where several persons are proved to have combined together for an illegal purpose, any act done by one of the party in pursuance of the original concerted plan and

with reference to the common object, is, in the contemplation of the law, the act of the whole party. It follows, therefore, that any writings or verbal expressions, being acts in themselves, or accompanying and explaining other acts, and so being part of the *res gestæ*, and which are brought home to one conspirator, are evidence against the other conspirators, provided it sufficiently appear that they were used in furtherance of the common design." And the author, afterwards, at page 208 of the same volume, adds: "But where words or writings are not acts in themselves, nor part of the *res gestæ*, but a mere relation or narrative of some part of the transaction, or as to the share which other persons have had in the execution of a common design, the evidence is not within the principle above mentioned, it altogether depends on the credit of the narrator, who is not before the court, and it can not therefore be received." To the same effect is 2 Russell on Crimes, (7th Am. ed.) 696; 1 Greenleaf on Evidence, (7th ed.) sec. 111; Best on Evidence, (1st Am. from 6th London ed.) sec. 508; *Patton* v. *State*, 6 Ohio St. 470.

The distinction which the counsel for the People omit to observe is, that the declaration, to be admissible, must not only be made during the pendency of the criminal enterprise, but also in furtherance of its objects. A mere narrative to a stranger, related during the pendency of the criminal enterprise, but of a past event or occurrence, is just as objectionable as if related after the criminal enterprise has terminated. It is no part of the *res gestæ*, and is a mere statement of what somebody else said or did, having no support from concomitant circumstances, and resting solely on the veracity of the narrator.

We think it was error to admit the evidence, and for that error the judgment is reversed and the cause remanded.

*Judgment reversed.*