So far as the questions arising upon this appeal are concerned, this action is upon a promissory note for $300, made by the defendant and delivered by him to the plaintiffs, and payable to them or bearer.
One of the defences set up by the answer is that it was so made and delivered for the accommodation of the plaintiffs, and that there was not at any time any consideration or value for the same.
The finding of fact is that the note was made in consideration that the plaintiffs would execute a draft or bill of exchange on the Watkins Sanitarium Company for the same amount as the note; and that the plaintiffs did, at the same time with the execution and delivery of the note by the defendant to them, execute and deliver to him a draft or bill of exchange accordingly, which he received.
This furnished a good consideration for the note. By the exchange of the obligation of one for that of another, a good consideration is raised for the undertaking of each. (Rice v.Mather, 3 Wend., 62; Dowe v. Schuit, 2 Denio, 621.) *Page 425 
The defendant, however, claims that his note was not given for the draft; that the execution of the draft was not the cause and consideration of his execution of the note, but that there was a further oral promise or undertaking of the plaintiffs that the drawee would and should accept the draft. But the finding of the learned justice is, that the note "was made in consideration that the plaintiffs would execute in favor of defendant" the draft or bill of exchange, and that they thereupon executed it. And this finding is well sustained by the testimony.
It is true that the draft was neither paid nor accepted by the drawee thereof, and that payment was refused. But at the time of the exchange of the instruments the one for the other, there was created an obligation upon the plaintiffs in favor of the defendant of equal amount, and prima facie of equal value to that made by him to them. And this was an obligation which (speaking generally), on the refusal of payment thereof by the drawee, could have been enforced by the defendant against the plaintiffs. For though the draft or order was by its terms payable to the defendant, without words of negotiability, still it was a bill of exchange. It was an order or request by one to another to pay a specified sum of money to a person; and that is a bill of exchange. (Leonard v. Mason, 1 Wend., 522; Hoyt
v. Lynch, 2 Sandf., 328.) And being a bill of exchange, upon the non-payment of it by the drawee the defendant had a right of action upon it against the plaintiffs, and could have recovered judgment against them for the amount of it.
So that the defence of a want of consideration for the note made by the defendant is not sustained.
But further: It appears in the findings of fact that the draft was presented to the drawee, and that payment was refused and has never been made; but that the defendant gave no notice to the plaintiffs of demand having been made and of payment having been refused until after this action was brought, and that the defendant still holds the draft and did not offer to return it until after this action was brought. *Page 426 
The fact alone, of neglect on the part of the defendant to make immediate demand of payment of the draft, and to give immediate notice of non-payment, would not relieve the plaintiffs from their liability to him upon it.
It is non-negotiable paper. It is held that the indorser of a non-negotiable note is not entitled to require that immediate demand be made for payment and notice of non-payment given. (Seymour v. Van Slyke, 8 Wend., 403, 422; Richards v.Warring, 1 Keyes, 576; Cromwell v. Hewitt, 40 N.Y., 491.)
And as the position of a drawee of a bill and of the indorser of a note are in certain respects alike (an indorser is a drawer in every sense, et sic e converso, per COWEN, J., Com. Bk. v.Hughes, 17 Wend., 98), it is claimed that these decisions are authority for a rule that neither can the drawer of a non-negotiable bill require presentment, demand and notice.
But though there be not that absolute duty upon the payee, and though he be not held to the strict rule applicable to a holder of negotiable paper, still he is subject to a duty, if he would in all cases preserve his right to call upon the drawer. He must not be guilty of positive laches, to the detriment of the drawer or other party to the instrument, upon whom he would retain a liability.
Thus where a note is taken in payment of a precedent debt on condition that the note is paid in a reasonable time, if the person do not endeavor to procure such payment and the money be lost by his default he must bear the loss. (Smith v. Wilson,
Andrews, 187; S.C., id., 228.) And so it was held in Chamberlyn
v. Delarive (2 Wilson, 353), where a non-negotiable draft or note had been given for an indebtedness of the defendant to the plaintiff, which had not in a lapse of four months been presented for payment, and the drawee had become insolvent; the court saying: "The law detests negligence and laches; there is no reason applicable to the case of holding a bill of exchange that is not applicable to this case." See, also, Tobey v. Barker
(5 Johns., 68). *Page 427 
And though the defendant in this case did, within a few days after the making of the draft, ask from the drawee the payment of it, he did not on refusal of the drawee to pay give notice to the plaintiffs of that fact, so that they might be alert to obtain payment or security. He neglected to notify them, and they were led to rest in the belief that it had been paid.
In this omission he failed of his whole duty, and if by reason of this there has been a loss of the amount of the draft he cannot hold the plaintiffs liable to him in that sum. Still, as he owed no strict duty to the plaintiffs to make a technical presentment and demand, and upon refusal to give immediate notice, his right to call upon them is not gone, unless by his neglect the money called for by the draft has been lost to them as well as him.
The findings of fact do not state that such has been the case. The most that is made known by them as to it is, that the drawee was indebted to the drawers at the time the draft was made in a sum greater than the amount of it, and that it has not since then in any manner paid that indebtedness.
The evidence in the case goes farther. It appears from that, that the payment of the draft was not refused on the ground that the drawee was not indebted to the plaintiffs, nor because it was unwilling to pay them; but on the ground that it was not a legal and proper way for the defendant to pay his indebtedness to the drawee by applying this draft upon his subscription to the capital stock of the drawee. It also appears that the plaintiffs on the execution of this draft gave credit on their books for the amount of it to the drawee; and that for a residue of its indebtedness to them before they knew of its non-payment they had filed a mechanic's lien, which is their only security for payment, from the amount of which lien the $300 represented by this draft was excluded by them, they supposing that it was paid.
From this testimony the learned justice who tried the cause might have inferred and found that whatever indebtedness to the plaintiffs from the drawee of the draft was not included *Page 428 
in the mechanic's lien was not only unsecured but was lost. And we may in support of his judgment assume that he did so find in reality, though he has not expressed that finding in writing. And this being so, he might, and we may assume that he did in fact also find that if the non-payment of the draft had been made known by the defendant to the plaintiffs in a reasonable time after refusal of payment, they would have included the amount of it in their mechanic's lien and thus have secured it.
Nor is it well claimed that the defendant had excuse for not giving to the plaintiffs notice of non-payment. It is true that it may be inferred that there were regulations of the drawee that all bills against it should be audited and allowed by a regular committee of its officers; and the bills of the plaintiffs against the amount of which this draft was drawn had not been so audited and allowed, nor had their whole account been presented. It is indeed a rule of law, that where one draws on another fraudulently, or without right to draw, having no funds in his hands, and without any expectation that his draft will be accepted and paid, in such case the holder of the bill is not obliged to give notice of presentment and non-payment.
But in this case there did exist an indebtedness from the drawee to the plaintiffs, which was known and not denied by it, as bills thereof were rendered week by week, and which was much more than the amount of the draft. Having this claim against the drawee, the plaintiffs had a right, so far as they and the defendant were interested, to execute to him their draft for it or a portion of it. Where there is a running account, or a fluctuating balance between parties, exceptions are created to the rule above stated, and one is justified in making his draft. (Dickins v. Beal, 10 Peters U.S., 572.) And on notice of non-payment plaintiffs might have taken means to set the auditing committee in motion, and had their bills allowed, or have used other measures to obtain or secure their debt. And in this view, the evidence admitted at the circuit against the objection and exception of the defendant *Page 429 
was properly received. It was as to the transactions between the plaintiffs and their drawee, and the indebtedness existing from it to them, and was pertinent.
And from all this it does follow that the defendant had, when this suit was begun, lost his right to pursue the plaintiffs upon the draft.
There was some question made upon the argument as to whether the answer contained averments which would permit of the draft being set off in favor of the defendant against the claim of the plaintiffs or made matter of counter-claim.
But as the defendant has, upon the findings and facts as they now appear, no right of action against the plaintiffs on the draft, it is not necessary to consider that question.
The judgment should be affirmed, with costs to the respondent.
All concur.
Judgment affirmed.