LESLIE *v.* BASSETT *et al.*

*(Superior Court of New York City, General Term. May 4, 1891.)*

DRAFTS—ACCEPTANCE—TRANSFER—BONA FIDE PURCHASERS.

Defendants accepted a draft drawn on them by A., in order to provide A. with funds wherewith to pay a draft drawn on A. by B., and accepted by A., for the accommodation of defendants, A. receiving a commission upon its acceptance for its trouble. Thereafter, A., being indebted to C. for an installment of interest not yet due, transferred defendants' acceptance, before maturity, to C., in payment of said interest. *Held*, that A. was a *bona fide* purchaser of defendants' said acceptance before maturity, and that the transfer of the same by A. to C. was no diversion of the acceptance from its intended purpose.

Exceptions from jury term.

Action by Frank Leslie against George F. Bassett and another, on a bill of exchange accepted by the defendants, and transferred to the plaintiff before maturity. The circumstances leading to the acceptance and transfer are substantially as follows: The defendants, merchants, doing business in New York, were accustomed to make purchases of earthenware of the firm of Henry Alcock & Co., of Colridge, Staffordshire, England, with which firm they had a line of credit. They had also been doing business through the New York office of the American Exchange in Europe, as a banking house, in transacting their foreign business. Wishing to extend their credit with Alcock & Co. beyond the usual limit, the defendants entered into an agreement with that firm, the substance of which was embodied in a written memorandum, as follows: "NEW YORK, September 20th, 1887.

"Terms, 4 mos. Note, with interest added, at the rate of 5% per annum, to the extent of £2,000. After the account shall have reached the limit of credit, £2,000, then Messrs. Alcock & Co. are to draw on American Exchange in Europe, London, (with B/L attached,) on our account. Interest on same, 5% per annum. GEO. F. BASSETT & CO.
"HENRY ALCOCK & CO."

After this agreement was made the defendants entered into an agreement with the American Exchange, the substance and effect of which was that that corporation should accept the drafts drawn by Alcock & Co. for goods purchased by defendants of that firm, payable 90 days after date, with bills of lading and invoice attached; that the American Exchange should then draw upon defendants drafts for the amount of the draft drawn by Alcock & Co., with 1 per cent. commission and expenses added, payable 20 days before the draft drawn by Alcock & Co. matured, so as to place the American Exchange in funds with which to pay the draft which it had accepted for Alcock & Co. When this arrangement was consummated, notice was given to Alcock & Co. Pursuant to the agreement, the defendants ordered a bill of merchandise from Henry Alcock & Co., amounting to £344. 8s. 3d. For the purchase price Alcock & Co. drew their bill of exchange, dated March 28, 1888, upon the American Exchange, payable 90 days after date. This bill was forwarded to the American Exchange, and duly accepted. The goods ordered were sent to David Inglis, the agent of the defendants in Liverpool, who shipped them to the defendants. To place itself in funds to meet the bill of exchange which it had become bound to pay to Henry Alcock & Co., the American Exchange made its draft upon the defendants, dated April 9, 1888, for $1,715.17, being the amount of the Alcock bill, with commissions and expenses added. This bill was payable 60 days from date, and on its face it is expressed to be for "mdse. a/c.1087 Alcock & Co." It is upon the acceptance of this draft that the action is brought. The plaintiff derived her title to the bill of exchange in suit in the following manner: On November 21, 1887, she loaned to the American Exchange in Europe, Limited, the sum of $50,000, and took therefor a certificate of deposit dated that day, and payable six months from date, with interest at 6 per cent. The plaintiff and Mr. Gillig substantially agree in the statement that the plaintiff asked Gillig, as he was about to leave

for Europe, in April, 1888, to make some provision for the payment of inter-. est on the debt due plaintiff from the exchange, but which was not due until the 21st of May following. To this request Gillig assented, and thereupon, indorsed and delivered to the plaintiff the bill in suit, under the agreement that it should be applied in payment of interest, and that any balance above the interest should be applied on account of the principal. The bill in suit was drawn and bears date April 9, 1888. This transaction of its transfer was within a day or two thereafter, as they both testify. Thereafter, and on April 13, 1888, the insolvency of the exchange was known, and on April 13th a receiver was appointed. Under the circumstances, the defendants claim, that the consideration for their acceptance had failed, and that the plaintiff, having made no present advance upon the faith of the bill, was not a *bona fide* holder of it, and that she took it subject to all the equities between the original parties. Upon the conclusion of the trial, both sides asked for the direction of a verdict. The court directed a verdict in favor of the plaintiff for $1,995.60, the amount claimed, with interest, to which direction the defendants excepted. The court thereupon ordered that the exceptions be heard in the first instance at general term, and the entry of the judgment in the mean time suspended.

Argued before SEDGWICK, C. J., and MCADAM, J.

*Fullerton & Rushmore*, for plaintiff. *Wing, Shoudy & Putnam*, for defendants.

MCADAM, J. Independently of the question whether the plaintiff became a *bona fide* holder of the acceptance within the meaning of *Coddington* v. *Bay*, 20 Johns. 637, and kindred cases,—a proposition not necessary to consider,—the verdict was properly directed for other reasons. *First.* The acceptance by the American Exchange of Alcock & Co.'s draft furnished a sufficient consideration for the acceptance in suit. *Dowe* v. *Schutt*, 2 Denio, 621; *Wooster* v. *Jenkins*, 3 Denio, 187; *Bank* v. *Stebbins*, 6 Duer, 341; *Newman* v. *Frost*, 52 N. Y. 422. *Second.* There was no understanding that the specific moneys to be collected by the American Exchange on the acceptance in suit were to be applied towards the payment of its acceptance of Alcock & Co.'s draft. The arrangement was that the defendants should accept the draft of the American Exchange, so as to put it in funds to pay its acceptance to Alcock & Co. 20 days before its maturity. In other words, so much money was to be placed with the American Exchange, to the credit of the defendants, against which its acceptance, a commission of 1 per cent., and expenses were to be charged. The American Exchange could do what it pleased with the defendants' acceptance or the money realized from it, so long as the amount was credited on their books. Any use the Exchange might make of either would neither be a misappropriation or diversion of the acceptance or money. They could meet their own acceptance as well with any other money on deposit. The acceptance and its proceeds belonged to the exchange, to do with as it pleased, subject to its liability to make its acceptance to Alcock & Co. good. The defendants evidently trusted the responsibility of the exchange, and its ability to make good its obligation. The transfer of the acceptance by the exchange to the plaintiff, as a payment in advance of the interest soon to become due on the $50,000 loan made by her to it, the balance thereof above the interest to apply on the principal, was therefore a valid transfer of that instrument by the person having the *jus disponendi*, and she became the owner and transferee thereof before maturity. Even assuming there had been a failure of or no consideration for the defendants' acceptance, the rule applicable would be that laid down in the case of *Bank* v. *Penfield*, 69 N. Y. 504, wherein the question arose with respect to the title of the holder of a note made for the accommodation of the payee, and by him indorsed and delivered to the plaintiff solely as collateral security to a precedent debt, without any-

agreement extending the time of payment of the debt. The court said: "It is universally conceded that the holder of an accommodation note, without restriction as to the mode of using it, may transfer it either in payment or as collateral security for an antecedent debt, and the maker will have no defense. It is only where the note has been diverted from the purpose for which it was intrusted to the payee, or some other equity exists in favor of the maker, that it is necessary that the holder should have parted with value on the faith of the note in order to cut off such equities of the maker." Also see *Bank* v. *Townsend*, 87 N. Y. 8. The defendants do not plead diversion of the acceptance, and if they rely upon that defense it must be inferred from their answer, for the intention is not clearly expressed. It charges that the plaintiff received the acceptance with knowledge of the facts, and that she has collected and received out of property and security transferred to her by the American Exchange sufficient to pay and satisfy all claims and demands she had against it, and ceased to have any right to collect or receive payment of the acceptance sued on,—defenses they utterly failed to establish. The defendants have called our attention to the case of *Bassett* v. *Leslie*, 123 N. Y. 396, 25 N. E. Rep. 386, which was an interpleader suit brought by Bassett & Co. against Mrs. Leslie and Alcock & Co., in respect to the acceptance in suit and Alcock & Co.'s claim for the merchandise delivered on the faith of the acceptance of the American Exchange, subsequently dishonored. The court below, on demurrer interposed to the complaint, held that the action was not maintainable. The general term, upon appeal, sustained the court at special term, and the court of appeals in affirming the courts below, and accepting, as it properly did, the allegations of the complaint in that suit as true, (it having been demurred to,) intimated that Mrs. Leslie (the plaintiff here) could not maintain an action on the defendant's acceptance, it having been diverted, and she not being a *bona fide* holder. The intimation was not necessary to a decision of that case, because the court put its affirmance on the ground that the claim of Mrs. Leslie on the acceptance, and of Alcock & Co. for the merchandise sold, were two separate and distinct obligations, and that Bassett & Co. could not be discharged from both on paying one. On the present trial Bassett & Co. on the one hand, and Mrs. Leslie on the other, have made their allegations and presented their proofs; and it is on these, and not on the undisputed facts alleged in the interpleader suit, that we are called upon to determine the propriety of the rulings made at the trial, and from these we draw the conclusions to which we have before referred. There was no defense to the action, the verdict was properly directed, the exceptions must be overruled, and the plaintiff permitted to enter judgment on the verdict, with costs.