## GRANT v. FIRST STATE BANK.

No. 14328—Opinion Filed Dec. 18, 1923.

(Syllabus.)

1. **Appeal and Error—Discretion of Trial Court—Refusal of Continuance.**

The application for a continuance for the purpose of obtaining additional evidence rests largely within the discretion of the trial court, and unless the application discloses the party has used proper and due diligence to obtain said evidence, this court will not reverse the ruling of the trial court.

2. **Banks and Banking—Promise of Bank Cashier to Maker of Note—Binding Effect.**

It is well established that a bank cashier or president has no authority to promise a person executing a note to the bank that the maker will not be required to pay the note, and such a promise, if made, is not binding upon the bank.

3. **Same—Fraudulent Representations by Corporate Officer Without Scope of Authority.**

The general rule of law is that a corporation is not liable for the acts of its agents for fraud in making representations where the officer is acting without the scope of his authority in giving the information relied upon, and in relation to matters in which the bank is not connected.

4. **Bills and Notes—Indorsement—Rescission—Conditions.**

One who has indorsed a negotiable instrument, and received the full value thereof, cannot rescind his indorsement without restoring everything of value he received by reason of said indorsement.

5. **Affirmance of Judgment.**

Record examined, and held, there was no error in refusing the evidence offered, and

the court did not err in directing a verdict for the plaintiff.

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by the First State Bank of Miami against V. V. Grant. Judgment for plaintiff, and defendant brings error. Affirmed.

Frank Nesbitt, for plaintiff in error.

D. H. Wilson, for defendant in error.

McNEILL, J. This action was commenced in the district court of Ottawa county on March 10, 1922, by the First State Bank of Miami, Okla., against V. V. Grant to recover upon a promissory note. The petition alleges, in substance, that on February 12, 1920, Joe Sheeks executed and delivered to C. A. Ayers his negotiable promissory note for $2,000, payable at the Commerce Trust Company, Kansas City, Mo., due two years thereafter, with interest at six per cent. per annum payable semi-annually. That after the execution of the same, the same was indorsed in blank by C. A. Ayers and Frank Matthews, and on the 19th day of August, 1920, the same was indorsed by the defendant, V. V. Grant, who transferred and delivered the said note for a valuable consideration to the Miami State Bank of Miami, Okla., who become the owner and holder thereof prior to maturity of said note in due course. In the month of August, 1921, prior to maturity of said note, said Miami State Bank became insolvent, and as such was taken into possession and control of the State Bank Commissioner, and the State Bank Commissioner, by virtue of his authority and the order of the district judge of Ottawa county, sold and transferred said note to the plaintiff, who is now the legal owner and holder thereof in due course. It is alleged that thereafter said note was duly presented for payment and payment refused and protested.

To this petition, the defendant answered, denying generally the allegations of the petition, and as affirmative defense pleaded in substance, that in 1920, W. S. O'Bannon was president and T. H. Thompson cashier of the Miami State Bank, and were in active charge and in control of the business. That W. S. O'Bannon inquired if defendant would sell his Buick automobile, and was advised by defendant he wanted $1,500 for the same. That O'Bannon advised defendant that he (O'Bannon) had some friends who lived in or near Buffalo, Mo., and were worth from $50,000 to $75,000. That one of said parties owned a note in the sum of $2,000 secured by a mortgage on 160 acres of land near Buffalo, Mo., worth $8,000. That

his said friend would trade said $2,000 note for said Buick automobile. That O'Bannon arranged a meeting between said friend and defendant and said defendant inquired of O'Bannon regarding the value of said note, and he informed defendant if defendant would make said trade and procure the note and mortgage the bank would purchase it from defendant, and would not ask the defendant to indorse the same for any other purpose than to pass title thereto, and said bank would not look to defendant as indorsee on said note, but would rely solely on the maker and the mortgaged security. It was alleged that in said transaction O'Bannon was acting for the ·bank and defendant believed the representations made by said O'Bannon, who was a confidential business advisor of defendant, and said statements were false and untrue and known by O'Bannon to be false and untrue; that said land is worth but a small amount and less than the face of the note and the makers and·indorsers of said note are worth less than $1,000 above their debts and liabilities, and these facts were not known to the defendant until after the filing of this suit.

To this answer, the plaintiff filed a reply, which was a general denial. The case was regularly set for trial upon December 4th. The defendant presented an affidavit for a continuance, stating he could not safely proceed to trial; that he had made inquiry regarding the location of certain witnesses, but did not ascertain their whereabouts until about the 24th of November, 1922, when he ascertained they were in or around Buffalo, Mo., and he had served notice to take their depositions, and the witnesses whose depositions he desired to take were C. A. Ayers and Joe Sheeks, who he was informed lived at Buffalo, Mo., and if the case was continued for the term he could have the depositions, and he desired to prove by them that neither was worth from $50,000 to $75,-000, and the land in Missouri which was supposed to be wort $8,000 was not worth to exceed $1,000, and that said Sheeks and Ayers were not worth over $1,000 over and above their debts and exemptions. This motion was overruled, and the case proceeded to trial before a jury.

Plaintiff introduced the note and proof that the note had been protested and had not been paid. That no payment had been made upon the same except two interest payments of $60 each. The defendant demurred to the evidence of plaintiff, which was overruled. The defendant Grant was produced as a witness and testified substantially as follows: That in 1920, O'Bannon was president of the Miami State Bank and introduced him to Sheeks and Ayers and

he traded his automobile to Ayers for the note in question, upon the representations of O'Bannon that the land secured by the mortgage was worth at least $8,000 and the makers and indorsers of the note were worth at least from $50,000 to $75,000; that O'Bannon was well acquainted with said parties and had known them for many years, and that if he traded his automobile for the note and mortgage, the bank would take the note and mortgage and would not look to him for payment, but would look entirely to the makers and other indorsers and the security. That he made said trade, indorsed the note to the bank, and the bank discounted the note six per cent. and deposited to his credit $1,880, which money he checked out a short time after the same was deposited to his credit. That Mr. Thompson, who is now cashier of the plaintiff bank, was cashier of the Miami State Bank at the time the note was transferred to it, and sometime ago Thompson informed defendant he made investigation, and the land was not worth to exceed $1,000; that the defendant did not know the makers or indorsers of said note nor their financial standing, and was induced to trade for said note upon the statement made by O'Bannon. The defendant further testified he was only asking $1,500 for his car.

We will first consider the question of whether the court erred in overruling the defendant's motion for a continuance and forcing the defendant to trial after the announcement that he was not ready. It is conceded the granting or refusing to grant a continuance rests largely in the judicial discretion of the trial court, and in the absence of abuse of said discretion, the ruling of the trial court will not be disturbed. We think the affidavit in the case was insufficient to predicate errors thereon. The record disclosed this case was filed in March, 1922. The defendant had filed his answer September 8, 1922, and reply thereafter was filed denying all the allegations of defendant's answer. Defendant in his answer pleads that Sheeks, Ayers, and Matthews were all residents of Buffalo, Mo. This fact was known to him away back in 1920. He knew the land was situated close to Buffalo, Mo. The affidavit for continuance alleges that on November 24th, or 25th, he served ·notice to take depositions, but failed to disclose why the same were not taken. The record further disclosed defendant knew where the land was situated and where these parties purported to reside for several years, and after filing his answer he made no preparation to obtain the evidence he sought to rely upon, until after the case was set for trial. We think the affidavit

fails to disclose due diligence by the defendant, when considered with his testimony in the case.

The next question argued involves the plea of the defendant that the president of the bank advised him that he would not look to him for payment of the note, but would look to the security and the previous indorsers. This question has been decided by this court against plaintiff in error's contention in the case of Gillis v. First National Bank of Frederick, 47 Okla. 411, 148 Pac. 994, where the court in the 3rd paragraph of the syllabus stated as follows:

"A bank cashier has no authority as such to bind the bank by a promise made to a person executing a note to the bank that the maker will not be required to pay said note."

In the body of the opinion, the court stated:

"And it is well established that a bank cashier or president has no authority to promise a person executing a note to the bank that the maker will not be required to pay the note, and such promise, if made, is not binding upon the bank"—citing a long line of authorities.

The general rule, found in 4 A. L. R. 772, in the notes, is stated as follows:

"The indorser cannot show by parol an agreement that he should indorse the instrument merely to transfer title to the indorsee, and should not incur any liability thereon."

The note also contains this statement:

"Or that indorser was not to incur any liability or the indorsement was to be without recompense"—citing a long line of cases.

A case almost identical with the facts in the case at bar is the case of Blair v. Mc-Quary (Kan.) 189 Pac. 948. By applying the law announced in the above entitled cases, the evidence that the defendant indorsed the note to the bank merely to transfer title and not to be liable thereon was incompetent.

The next question involves the question of fraud. The acts of fraud attempted to be alleged and proven did not relate to the transfer of the note to the bank, but related to the exchange of the automobile for the notes. The general rule of law is that a corporation is not liable for the acts of its agent for fraud in making representations where the officer is acting without the scope of his authority in giving the information relied on. State v. Emery, 73 Oklahoma, 174 Pac. 770. The president of the bank in making representations regarding the value of the land in Missouri, and re-garding the financial ability of the indorsers, was acting without the scope of his authority. The defendant, however, contends that by application of the rule in the case of Hood v. Wood, 61 Okla. 294, 161 Pac. 210, wherein the court stated:

"A representation as to value is usually regarded as an expression of opinion, but, where false and made by one as an inducement to another, who is ignorant thereof, to enter into a contract, and is relied upon to the detriment of the latter, may be made the basis of an action for damages consequent upon fraud and misrepresentation"

—that by application of said rule he is entitled to rescind. The allegations of the petition and the evidence might be sufficient to maintain an action for damages against O'Bannon, but not against the bank. The same case, however, cites our statute and announces the rule:

"One seeking a rescission is only required to restore everything of value, and under the facts of this case it is held that the party seeking a rescission of the contract is entitled to the relief sought."

In the instant case, the defendant received from the bank $1,880 in cash, which was approximately the full value of the note. If he seeks to rescind his action in transferring the note to the bank, it would be necessary to return to the bank the amount received. He cannot be heard to say: "I will retain the $1,880, I received from the bank, by the indorsement, and rescind my indorsement." The evidence offered to support the allegations of the answer was insufficient to support a verdict for defendant.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.