**FARMERS' STATE BANK OF BELPRE v. HARRINGTON.**

No. 14341—Opinion Filed April 15, 1924.

**1. Bills and Notes—Renewal Note as Waiver of Fraud.**

If a party is induced by fraudulent acts to execute a note and afterwards renews the note, with full knowledge of the fraud, then such renewal would operate as a waiver of his right to urge the same as a defense against said renewal note.

**2. Same.**

One who gives a note in renewal of another note with knowledge at the time of a partial failure of the consideration for the original note, or of false representations made by the payee, waives such defense and cannot set it up to defeat a recovery on the renewal note.

**3. Contracts—Acquiescence as Preventing Disaffirmance.**

Where a party, with full knowledge of the facts, has, distinctly and unequivocally, done any act which implies an intention to abide by the contract, he cannot subsequently disaffirm the contract.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Texas County; Arthur G. Sutton, Judge.

Action by the Farmers' State Bank of Belpre, Kansas, a corporation, against E. S. Harrington, for judgment on a promissory note. Judgment for defendant. Plaintiff brings error. Reversed.

A. L. Moffat and F. Hiner Dale, for plaintiff in error.

Ross Rizley and John L. Gleason, for defendant in error.

Opinion by THOMPSON, C. This action originated in the district court of Texas

county, Okla., by the Farmers' State Bank, a corporation, plaintiff in error, plaintiff below, filing its petition against E. S. Harrington, defendant in error, defendant below, for the recovery of $1,000 and interest upon a promissory note.

The parties will be referred to as plaintiff and defendant, as they appeared in the lower court.

Plaintiff alleged that the defendant was indebted to it upon a promissory note, made, executed, and delivered November 18, 1921, in the sum of $1,000, with interest thereon at the rate of ten per cent. per annum from maturity thereof, which date of maturity was on the 1st day of December, 1921. The note is attached as an exhibit to the petition.

Defendant answered by way of general denial and alleged that said note was procured through fraud and misrepresentation; that said note was given as consideration for a one-eighth interest in an oil and gas mining lease to plaintiff, and that plaintiff's cashier represented that the land, upon which the lease was executed, was in the greatest gas producing territory in the world, and that it was surrounded by producing gas wells within a half mile of said tract of land, and that good recognized geologists had made an investigation and survey of said tract of land, and had reported that said land was rich in gas, and that a gas well would be commenced within 60 days from the date of the execution of the note, and this one well would be drilled to gas without any expense to defendant as part of the consideration and that said representations were false and fraudulent, and that defendant was misled thereby to his detriment, and that plaintiff well knew said representations to be false; that plaintiff never did commence and never did drill the well for which said note was given; that his said one-eighth interest was entirely worthless, and that the note was wholly without consideration.

Plaintiff replied, denying the allegations contained in the answer, and alleging that the note sued upon was given in consideration and renewal of a certain note, executed by defendant on the 4th day of April, 1921, which was a renewal of a note given previously, and that there had been seven renewals of the original note given, the first note being given on the 27th day of October, 1919, and delivered to one J. W. Martin, which note was sold and transferred to the plaintiff, and it was an innocent purchaser of said note for value before maturity and without notice of any defects, and that if any fraudulent representations were made

in the procurement of the note, the same were unknown to plaintiff, and that defendant, by reason of his renewals, cancellations, and surrender, waived each and every defense set forth in his answer.

At the close of the defendant's evidence the plaintiff demurred to the sufficiency of the evidence to sustain his defense, which demurrer was overruled and exception reserved, and at the close of all the evidence in the case the plaintiff requested the court to direct a verdict in its favor, which was denied by the court and exceptions reserved.

The cause was tried to a jury and resulted in a verdict in favor of the defendant. A motion for new trial was filed and overruled. Judgment was rendered upon the verdict of the jury that plaintiff take nothing by reason of the action and plaintiff was adjudged to pay the costs, from which judgment the defendant appeals.

Attorneys for plaintiff urge two propositions, which are, first, to sustain the charge of fraud if the evidence is otherwise sufficient, the defendant must prove that he was damaged by reason of such fraud; second, conceding that the first note was procured by false representations, it is contended that defendant could not defend against the last renewal note on account of the alleged false representations, because he waived such defense by the giving of said renewal notes.

The evidence on part of the defendant was to the effect that he secured an assignment of a one-eighth interest in an oil and gas mining lease from J. W. Martin, on October 25, 1919, for which he executed a note for $1,000, the note sued on in this action being a renewal of said note; that J. W. Martin made certain representations as to the production of gas within half a mile of the lands, covered by the lease, stating one well was producing several million cubic feet; that the lands were located in one of the greatest gas producing areas in the world; that the said Martin agreed to drill one well, free of expense to him, to production on the identical land covered by the lease, to be commenced within 60 days; that later he visited the land covered by the lease, and found no such production as was represented by Martin; that no well was ever drilled by Martin on the property, and that the promises made by Martin had not been fulfilled; that he, together with the other owners of the lease, some time in 1920, contracted said lands, covered by their lease, to the Southwestern Gas Company to be drilled; that after full knowledge of all these facts of the failure to carry out the promises, he renewed the original note, executed by him, as consideration by him for said

lease, several times, and, as shown by the record, the defendant renewed the original note seven times, the last renewal being November 19, 1921, and in a letter introduced, which was written by the defendant, the letter head being as follows:

"Harrington Real Estate Co.
" 'We Sell The Earth.'
"Real Estate—Farm Loans—Insurance."

—dated June 21, 1921, we find this statement:

"My idea would be to pay the rental and $400 offset money and reinstate our lease and then sell for half we have got in it clear if we can't get any more and let it go at that."

We also find the following testimony, given by the defendant:

"Q. And then after you had made your investigation down there in 1920, you say it was in the spring, if I understand you right, you then knew all about the situation, didn't you? A. Well, I went down there and seen the peice of land and when I came back I didn't think—I was not entirely satisfied with it. Q. And you knew they had not drilled? A. Yes, sir. Q. As you claim they ought to have done. Then after, after that the bank called your attention to the fact that your note was due for payment you renewed that note, didn't you, after that? A. Yes, sir; I thought I had to. Q. You thought you had to? A. Yes. Q. And you have renewed it a time or two since then, haven't you? A. Yes sir. Q. And you renewed that note knowing all these matters of which you have testified? A. I always have. Q. You always have known it? A. I always have renewed my note when it came due or made an attempt to. Q. I say you renewed this note one or two times after you knew all about this condition down there which you have testified to—about? A. Yes, sir."

The defendant's testimony shows that the lease on the 160 acres of land was worth, at the time the defendant purchased a one-eighth interest in it, $50 per acre.

For the purposes of this opinion the above is a sufficient statement of the evidence in the case.

It will be observed that the defendant had informed himself about all the conditions of this lease by making a personal investigation; that he knew that the promises, which he claims J. W. Martin made to him, had not been fulfilled, and that the representations, which he claimed J. W. Martin made to him, were untrue; yet, the defendant, with full knowledge of all these facts, joined with the other owners in the lease in a contract with the Southwestern Gas Company to drill this property, and as late as

June 21, 1921, after full knowledge of all the facts, as above stated, we find him writing a letter to his other joint owners of the lease, attempting to secure a reinstatement of the lease by paying additional money and then sell one-half of their interest. We also find the defendant on his own admissions renewing the note several times, after having full knowledge of all the facts, as above set forth in this opinion. Under this state of facts, as disclosed by this record, we are clearly of the opinion that the defendant up to the time this suit was brought was attempting to hold on to his interest in this lease and secure a profit therefrom.

As disclosed by the letter head, this defendant, himself, was engaged in the real estate, farm loan, and insurance business, which letter head carried with it this advertisement, "We sell the earth," and we are forced to conclude that defendant was not inexperienced in this line of trade; that he took his chances in the purchase of an interest in this lease, which, at the time of the transaction, was worth the amount he agreed to pay for it, that whatever Martin and his associates failed to perform of the promises to drill a well, or whatever misrepresentations were made about the production of wells in and around this property, that the defendant waived his right by his actions and conduct to rescind the contract and placed himself in a situation that he could not restore the interest assigned to him and that after he was in possession of full knowledge of all the facts as to the fraudulent acts he tried to renew the lease and renewed the note several times, which acts, on his part, operated as a waiver of his right to urge the same as a defense against said renewal note.

Whatever may be the decisions of other courts, this question has been set at rest by at least two different decisions of this court. In the case of Campbell v. Newton et al., 52 Okla. 518, 152 Pac. 841, this court said:

"If a party is induced by fraudulent acts to execute a note and afterwards renews the note, with full knowledge of the fraud, then such renewal would operate as a waiver of his right to urge the same as a defense against said renewal note."

This court again announced the same rule in the case of Posey v. Citizens' State Bank, 93 Okla. 266, Pac. 628.

In the case of Franklin Phosphate Company v. International Harvester Company of America, 62 Fla. 185, 57 South. 206, the court said:

"One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee, etc., waives such defense and cannot set it up to defeat a recovery on the renewal note. And where one giving such renewal note either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence could have discovered them and ascertained his rights, it became his duty to make such inquiry and investigation before executing the renewal note, and if he fails to do so he is as much bound as if he had actual knowledge thereof."

See, also, Roess Lumber Company, a corporation, v. State Exchange Bank, 68 Fla. 324, 67 South. 188; 9 C. J., secs. 77, 78, and 79, pp. 1198 and 1199, and notes; 4 R. C. L. 514.

In the case of Payne v. Beaurnout (Tex.) 245 S. W. 95, cited and relied upon by attorneys for defendant, at page 99 we find this statement:

"Then appellees have not anywhere sufficiently pleaded or shown that appellants consented to any extension of payment with full knowledge of the alleged fraudulent representations made at the time of the sale. * * *"

The above language shows that in that case the party seeking to make the defense did not have full knowledge of all the facts as to false representations and fraud, which distinguishes it from the instant case, in this, that the defendant here, after having full information, continued to assert rights of ownership in the lease and attempted to obtain advantages therefrom and made contracts in regard thereto and never sought to deny his obligation to pay the note until after he had renewed the same seven times.

We are, therefore, of the opinion on the defendant's own admissions and upon his conduct and actions, in connection with this transaction, that as a matter of law he waived his right to assert the defense, sought to be interposed by him in this action, and under the decisions of this court and other authorities herein referred to there should have been a judgment in this case in favor of the plaintiff and that the judgment of the trial court in favor of the defendant was clearly erroneous and the same should be and is hereby reversed and remanded.

By the Court: It is so ordered.