## SECURITY NAT. BANK OF TULSA v. BOHNEFELD.

No. 17749.  Opinion Filed March 20, 1928.

Rehearing Denied May 29, 1928.

(Syllabus.)

1. **Bills and Notes—Acceptance of Note of Others as Consideration for Giving Note.**

Where a party gives his note, and at the time accepts the note of others for the same amount, each note constitutes a consideration for the other.

2. **Same—Defense of Fraud or Failure of Consideration Waived by Giving Renewal Note with Knowledge of Defense or of Facts Putting upon Inquiry.**

One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee or his agent in procuring such note, waives such defense and cannot set it up to defeat a recovery on the renewal note. And where one giving such renewal note either had knowledge of such facts and circumstances or by the exercise of ordinary diligence could have discovered them, and ascertained his rights, it became his duty to make such inquiry and investigation before executing the renewal note, and, if he fails so to do, he is as much bound as if he had actual knowledge thereof.

3. **Banks and Banking—Bank not Bound by Officers' Promise to Maker of Note that He Will not be Required to Pay.**

The officers of a bank have no authority as such to bind the bank by a promise made to a person executing a note to the bank that the maker will not be required to pay the same.

Error from District Court, Tulsa County; Luther James.

Action by the Security National Bank of Tulsa against William O. Bohnefeld. Judgment for defendant, and plaintiff brings error. Reversed.

C. B. Stuart, Charles A. Coakley, E. J. Doerner, Chas. L. Yancey, Henry L. Fist, Hulette F. Aby, and William H. Tucker, for plaintiff in error.

E. G. Wilson, W. H. Thompson, and W. F. Thompson, for defendant in error.

LESTER, J. The parties to this appeal occupy the same position as in the district court, and will be referred to as plaintiff and defendant.

The plaintiff brought an action for judgment against the defendant on a certain promissory note in the sum of $10,000 with interest thereon at the rate of 5 per cent. and certain attorney's fees.

Said note was dated September 16, 1923, and became due 90 days thereafter, and made payable to the Liberty National Bank of Tulsa, Okla.

The plaintiff alleged that on the 5th day of November, 1923, the Liberty National Bank sold to the plaintiff said note for a valuable consideration.

The defendant filed his answer, in which he alleged that the president and acting business manager of the Liberty National Bank, with the purpose of cheating and defrauding defendant, caused the defendant to sign and deliver said note to said bank; that the same was signed and delivered to the said bank without any consideration whatsoever; and that said officers of the bank, as an inducement to procure said note from the defendant, orally agreed and promised said defendant that said note would never be considered or used as an obligation against said defendant.

Defendant further alleged that:

"* * * A. E. Lewis and W. L. Lewis * * * then and there proposed and agreed that if the defendant would execute his note, payable to the said Liberty National Bank, in

the sum of $10,000, that the said Liberty National Bank would procure the note of A. E. Lewis and W. L. Lewis in a like sum, to wit, in the sum of $10,000, payable to the order of the defendant and deliver the same to the defendant, and that at any time thereafter the defendant might surrender the said note so to be executed by the said A. E. Lewis and W. L. Lewis to said Liberty National Bank and that upon the surrender thereof to said Liberty National Bank, the said Liberty National Bank would cancel and deliver up the note so executed by this defendant, and that the note of this defendant would never be considered or used as an obligation against the defendant.

"And believing said representations and promises of the said Liberty National Bank to be true, and relying thereon, the defendant was thereby induced to and did execute the note sued on herein, and pursuant to the promise of said bank, the said bank did procure the execution and delivery to the defendant of a note executed by the said A. E. Lewis and W. L. Lewis, in the sum of $10,000, and the defendant received no other or further consideration for the execution of the note sued on, except as stated in the fifth paragraph hereof, than the said note so executed by A. E. Lewis and W. L. Lewis, which was then and is now entirely worthless, and the defendant further says that prior to the indorsement and delivery of the note sued on herein, the plaintiff, Security National Bank, had full notice and knowledge of all the facts hereinbefore stated."

It further appears from the pleadings that by a written agreement dated November 15, 1923, between the plaintiff bank and Liberty National Bank, the plaintiff bank took over practically all the assets of the Liberty National Bank and that later it came into possession of the note that is the subject of this controversy from the Federal Reserve Bank at Kansas City, where it had been accepted by that bank and rediscounted, having been forwarded to it by the Liberty National Bank of Tulsa. At the time the Federal Reserve Bank at Kansas City forwarded said note to the plaintiff bank, it charged the plaintiff bank with the value of the same.

A trial was held to the court and jury resulting in a judgment in favor of the defendant, from which judgment the plaintiff prosecutes this appeal.

The plaintiff assigns numerous errors upon the part of the trial court. We think that all the material propositions necessary for the determination of this appeal are embraced in plaintiff's assignment No. 4, which is as follows:

"The trial court erred in overruling the motion of the plaintiff in error to direct the jury to render a verdict in favor of this plaintiff in error."

The first proposition we shall discuss is whether the execution and delivery of a note executed and signed by A. E. Lewis and W. L. Lewis, and made payable to the defendant in an amount similar to the note executed by the defendant in favor of the Liberty National Bank, constituted a sufficient consideration to support the execution and delivery of the defendant's note to said Liberty National Bank. We find that the authorities hold that:

"Where cross notes are made, and specially exchanged by the makers, each note is a proper debt of the maker and each holder a purchaser for value."

In the case of Dowe v. Schutt, 2 Denio (N. Y.) 621, 623, the court sustained the consideration for an exchange of notes in the following language, together with authorities thereto cited:

" 'Where cross notes are made, and specially exchanged by the makers, each note is the proper debt of the maker thereof, and each holder is a purchaser for value. As the note is a debt due to the holder, and his property, he may sell it on such terms and at such price as he pleases. It is strictly business paper, and although discounted on usurious terms, that cannot affect its validity, as respects the maker.' In 2 Am. & Eng. Enc. Law, 363, it is also said: 'The exchange of notes, i. e., A. giving B. his note in consideration of B. giving his to A., is a lawful transaction, and both notes will be upheld; each note being the consideration for the other.' Nothing is better established than that a promissory note given by the maker in exchange for a promissory note given by the payee is for good consideration, and is in no sense an accommodation note, although made for the mutual accommodation of the parties. Whittier v. Eager, 1 Allen, 500; Higginson v. Gray, 6 Metc. (Mass.) 212; Daniel, Neg. Inst. (4th Ed.) section 187; Mewman v. Frost, 52 N. Y. 422, 424. This is true though the note given in exchange is worthless. Rice v. Grange (N. Y. App.) 30 N. E. 46. The courts do not inquire into the adequacy of a bona fide consideration. Earl v. Peck, 64 N. Y. 596; L. R. 2 App. Cas. 616."

In the case of Shannon v. Hawley, 66 N. Y. Supp. 471, McAdam, J., speaking for the court, said:

"It is elementary that one promise is a legal consideration for another. If a promissory note is made by A. to B. in exchange for a promissory note made by B. to A., each note is a valid consideration for the other, whether between the original parties, or in an action by an indorsee. It is in the nature of an exchange of property, each party getting title to the property received in exchange.

Newman v. Frost, 52 N. Y. 422; Rice v. Grange, 131 N. Y. 149, 30 N. E. 46; Bank v. Smith, 155 N. Y. 185, 49 N. E. 680; Backus v. Spaulding, 116 Mass. 418; 4 Am. & Eng. Enc. Law (2nd Ed.) 188; Edw.Bills, 322 Chit. Bills (10th Am. Ed.) 708; Daniel, Neg. Inst. section 187; Wooster v. Jenkins, 3 Denio, 187; Dowe v. Schutt, 2 Denio, 621. If both notes are due, and each remains in the hands of its payee, the one may doubtless be set off against the other. But the two contracts, though mutual, are independent; and, if they are for the payment of money at different times, each must be performed according to its terms. Backus v. Spaulding, supra. In Wooster v. Jenkins, supra, the court said:

" 'It is urged that, as between the original parties, cross notes or acceptances should be regarded as accommodation, in contradistinction to business securities. But the rule is settled .the other way. Each party may prove the debt against the other under a commission in bankruptcy. And, although one party sells the note or bill at a greater discount than 7 per centum, the purchaser will acquire a good title. It is true that, so long as the securities are in the hands of the original parties, they will balance each other. But it will be by way of set-off, and not on the ground that they are invalid.' "

In the case of Matlock v. Scheuerman (Ore.) 93 Pac. 823, the court in the 10th paragraph of the syllabus said:

"Where there is an exchange of commercial paper, each instrument forms a sufficient consideration for the other, and such exchange is an independent obligation not conditioned on the payment of the other, unless such condition is expressed in it."

In the case of William Newman v. Eli C. Frost, 52 N. Y. 422, the court in syllabus No. 1 said:

"The giving of a bill of exchange drawn by one party in exchange for the promissory note of the other for the same amount furnishes a good consideration for the latter."

In the case of Newmarket Savings Bank v. Hanson (N. H.) 32 Atl. 774, the court in syllabus No. 2 said:

"Where defendant gives his note to another, knowing that it is to be used to obtain money on, and at the same time takes the other's note for the same amount, each note is the consideration for the other, and defendant is the principal on his note, and not a surety; and it is immaterial that the one discounting the note knows the facts."

In view of the above authorities, we hold that the exchange of paper between the defendant and the Lewises constituted a sufficient consideration for the execution of defendant's note. We shall next discuss the proposition as to whether a party is liable where he executes a renewal note with knowledge of the facts and circumstances or by the exercise of ordinary care could have discovered them and ascertained his rights.

The original note to the Liberty National Bank was executed and delivered to the said bank by the defendant on the 16th day of July, 1923. The renewal note, that is, the subject of the instant action, was executed by the defendant on the 16th day of September, 1923, and the defendant (C.-M. 83-84) testified under what circumstances the renewal note was made and executed by him:

"Q. Now, Mr. Bohnefeld, I notice the note introduced in evidence here was signed the 16th day of September. Can you explain how this note came to be signed? A. Well, I happened to be in California at that time and I was ill and that was during the big boom in the California fields and the great depression in the Mid-continent fields, and I got a letter from W. L. Lewis, inclosing two notes, made out, one for $11,000 and for $10,000, asking me to please sign the two notes and return to him by self-addressed envelope at once, in order that they could be returned to the Federal Reserve Bank, or something to that effect. I disremember just exactly what that was, so having in mind the condition of things here, I just supposed that he had not been able to negotiate that sale to the best advantage and just signed the notes and sent them back as per his request. Q. You were in California at that time? A. Yes, sir; Long Beach, Cal. Q. And this note is a renewal of the note made on the 16th day of June, 1923? A. Yes, sir."

The plaintiff and defendant each cite authorities to support their respective positions on the question relating to the defendant's liability by reason of the defendant having executed a renewal note. The defendant in error has failed to cite any Oklahoma case on this point, and we find after a careful examination of the cases from this court that the rule seems to be well settled that where one gives a note in renewal of another note with knowledge of such facts and circumstances or by the exercise of ordinary diligence could have discovered them and ascertained his right, it becomes his duty to make such inquiry and investigation before making the execution of the renewal note, and if he fails to do so he is as much bound as if he had actual knowledge.

In the case of Farmers' State Bank of Belpre, Kan., v. Harrington, 98 Okla. 293, 225 Pac. 705, the court there said:

"If a party is induced by fraudulent acts

to execute a note, and afterwards renews the note, with full knowledge of the fraud, then such renewal would operate as a waiver of his right to urge the same as a defense against said renewal note."

"2. One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or of false representation made by the payee, waives such defense and cannot set it up to defeat a recovery on the renewal note."

The quotations from the two last-named cases of this court follow the doctrine laid down in the case of Campbell v. Newton & Driskill, 52 Okla. 518, 152 Pac. 841, in which the court announced the rule to be:

"If a party is induced by fraudulent acts to execute a note and afterwards renews the note, with full knowledge of the fraud, then such renewal would operate as a waiver of his right to urge the same as a defense against said renewal."

In the case of Bank of Union v. Hungerford, 111 Okla. 225, 239 Pac. 252, the court again announced the rule to be:

"One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee, or his agent in procuring such note, waives such defense and cannot set it up to defeat a recovery on the renewal note. And where one giving such renewal note either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence could have discovered them, and ascertained his right, it became his duty to make such inquiry and investigation before executing the renewal note, and, if he fails so to do, he is as much bound as if he had actual knowledge thereof."

The defendant testified that the Lewis brothers told him that the note would be left at the bank and that he could come in at any time and get it, and, to be exact, we quote the following language of the defendant at page 81, case-made:

"We will guarantee that it will not obligate you in any way whatsoever; you will not ever be called upon to pay this note, nor any interest on it, and you can get the note any time that you wish. If at any time you become dissatisfied with having signed the note, you just come in here and ask us for it and we will give it to you."

As heretofore observed the defendant (C.-M. 84) testified that he received a letter from W. L. Lewis, including two notes, one made out for $11,000, and the other for $10,-000, asking the defendant to please sign the two notes and return to him by self-addressed envelope at once, in order that they could be returned to the Federal Reserve Bank. This reference by the defendant to the letter that he had received from Lewis clearly put the defendant on notice that the Liberty National Bank was not holding said note in its bank, but that they had placed the note with the Federal Reserve Bank, and, therefore, clearly inconsistent with Lewis' former promise that the defendant's note would be held at the Liberty National Bank, where the defendant could obtain it at any time.

The defendant was a stockholder of the Liberty National Bank and it appears that he owed the bank the sum of $11,000 on an additional note for money borrowed, and that by the exercise of ordinary care he could have easily discovered the fraudulent representation made by the Lewis brothers to the defendant, and, certainly, the letter from Lewis to the defendant showed beyond any question of doubt that the original note of the defendant had been placed with another bank, and that the renewal note would be returned to the same bank.

Under the facts and circumstances in this case, we think the defendant knew of the fraudulent acts of the Lewises at the time he signed the renewal note, or if the defendant had exercised ordinary diligence, he could have discovered them and ascertained his rights in the premises, and, certainly, after he received the letter from Lewis informing him that he desired to return the note to the Federal Reserve Bank, it was then the duty of the defendant to make a vigilant effort to know why Lewis was forwarding the note to the Federal Reserve Bank instead of keeping it in the bank at Tulsa, where the defendant might obtain said note at any time as claimed by the defendant.

We therefore conclude that, under the facts and circumstances surrounding the execution of the renewal notes, the defendant is liable thereon.

The defendant insists that, as the note was given for the use and benefit of the bank and the bank received the proceeds therefrom, therefore, the defendant is not liable, and further contends that, as this proposition was duly submitted by the court to the jury, and there being competent evidence reasonably tending to support the verdict of the jury, the same should not be disturbed on review.

Owing to other reasons that are determinative in this case, it is not absolutely necessary to discuss the question as to whether the bank received the proceeds from defend-

ant's note, but after a careful review of the defendant's testimony together with all the other witnesses in the case, we think it is clearly shown that the bank did not receive the proceeds from the said note and that the defendant well knew at the time he signed the said note that the proceeds were to be used by the Lewises.

The defendant testified, C.-M. 81, that in a conversation with W. L. Lewis, the said W. L. Lewis stated to the defendant:

"Well, I hesitated about it and so he finally said: 'Well, Bohnefeld, I will tell you what we will do: If you will sign that note, we would be willing to give you a note signed jointly by myself and Allie in the same amount and it will be exchangeable at any time for the note which you might sign to the Liberty National Bank.'"

On the same date the defendant executed his note to the bank, W. L. Lewis and A. E. Lewis executed and delivered their note to the defendant for the same amount. In this same conversation the Lewises exacted of the defendant that he would keep the arrangement between the Lewises and defendant secret. In a statement furnished by the bank to the defendant during the month of June, 1923, it is shown that on the 16th day of June, the very date on which the original note was executed and delivered to the bank by the defendant, the defendant was credited with the sum of $10,000. Just how this item was checked out, it is not shown. The bank statement for the month of June was received by the defendant on July 1, 1923, and examined by him. It was not only shown that the credit was given to Bohnefeld on the 16th day of June, 1923, but the June statement also shows that it had been checked out between June 16, 1923, and June 18, 1923. The defendant made no complaint whatsoever to the bank regarding the manner of handling the $10,000 credit.

Under the facts and circumstances which were peculiarly within the knowledge of the defendant, showing beyond question the bad faith of the Lewises towards the bank, and no one other than the defendant and the Lewises having knowledge of the secret and collusive understanding between the Lewises and defendant, we find that the defendant was lending his aid, assistance, and comfort to the scheme of the Lewises to promote their individual adventure.

As we view the case, even if the defendant could excuse himself from all other legal reasons from liability, before the defendant could prevail upon the theory that the bank got the benefit from the proceeds of the defendant's note, it clearly devolved on the defendant to show by clear and convincing evidence that such was the case. This the defendant has failed to do. The authorities are clear and uniform that where an officer of a bank makes misrepresentations while acting for himself and known to the other party, such corporation is not liable thereon.

In Security Trust & Savings Bank of Charles City, Iowa, v. Gleichmann, 50 Okla. 441, 150 Pac. 908, in syllabus paragraph No. 5 thereof, it is said:

"A corporation is not bound by the acts, nor chargeable with knowledge, of one of its officers in respect to a transaction in which such officer is acting in his own interest."

In the case of Newland v. First National Bank of Buffalo, 91 Okla. 169, 216 Pac. 932, in syllabus paragraph No. 3 of said opinion, it is stated:

"A corporation is not bound by the acts, nor chargeable with knowledge, of one of its officers in respect to a transaction in which such officer is acting in his own interest."

The final proposition to be considered in this case is whether the managing officer of a bank has the authority as such to bind the bank by a secret promise made to a person executing a note in favor of the bank, that such maker will not be required to pay said note when the same becomes due. The commercial and fiscal life of the state is very largely dependent upon the integrity and sound business judgment of those having in charge its banking business. The principal object and purpose of a bank is to invite deposits of money from the public and to use such money in the purchase of interest bearing securities, or make loans to responsible persons at a legal rate of interest.

The principal liabilities of a bank consist of money on deposit from its customers. The principal assets of a bank consist in the securities received through the investment of such deposits. Banks, by the acceptance of deposits from their customers, assume a trust relation that cannot be fraudulently and clandestinely bargained away by their officers. Every note that is executed and delivered to a bank for money loaned by it becomes a part of its assets, and every depositor has a right to rely upon such note as being a legal, binding, and valid obligation upon the maker thereof, and any secret or collusive agreement made between such maker and the officers of a bank, to the effect that such bank will not hold the maker thereof liable, is invalid, null, and void.

We quote with approval certain language

which is to be found in the case of Cedar State Bank v. Olson, 116 Kan. 320, 226 Pac. 995, wherein the Supreme Court of Kansas said:

"The banking business is fraught with public concern. Banks do business through permission of the law subject always to its provisions for the protection of depositors, creditors, and stockholders. Public faith, credit, and honesty in business transactions are a bank's main assets. Banks are subject to public regulation to the end that they may make proper loans and freely contract debts with depositors and others, to achieve the ends of legitimate business. The statute requires careful examination by the bank commissioner periodically in order that those who deal with banks may not be misled by appearances. To sanction any arrangement, whereby the real assets and securities of a bank are to be regarded as less than or different from the apparent assets and securities, would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction the object of which is to give to the assets of a bank a favorable appearance for purposes of examination, but less favorable for purposes of liability or enforcement. The defendant, having signed the note with full understanding of its purposes, cannot be relieved of liability. Considering the note as a part of the bank's assets. an understanding or agreement of nonliability was neither proper nor tenable. It amounted to a fraud upon the depositors, stockholders, and the public to agree that the obligation which the defendant assumed was, in fact, not an obligation. It amounted to a fraud upon the depositors, creditors, and stockholders of the bank and a fraud upon the public because it gave assurance that the assets of the bank were sound. Having given the note with the avowed object of having it appear as an asset for purposes of examination, she is estopped from asserting a secret understanding that she was not to be held liable. The law will not countenance contracts that are against the public good, and, therefore, forbidden by public policy.

"For authorities bearing on various phases of the subject, see notes in 26 L. R. A. (N. S.) 993; 28 L. R. A. (N. S.) 501; 34 L. R. A. (N. S.) 105; L. R. A. 1916A. 1218; L. R. A. 1917B, 618; Central Bank of Bingham v. Stephens, 58 Utah, 358, 199 Pac. 1018; Bank of Slater v. Union Station Bank, 283 Mo. 308, 222 S. W. 993; First National Bank v. Davidson. 48 N. D. 944. 188 N. W. 194; Vallely v. De Vaney (N. D.) 194 N. W. 903; State Bank of Moore v. Forsyth, 41 Mont. 249, 108 Pac. 914. 28 L. R. A. (N. S.) 501: New England Fire Ins. Co. v. Haynes, 71 Vt. 306. 45 Atl. 221. 76 Am. St. Rep. 771: Westwater v. Lyons. 193 Fed. 817. 113 C. C. A. 617: Means v. Bank. 97 Kan. 748. 156 Pac. 701; Bank v. Watson, supra, and cases cited."

In the case of Grant v. First State Bank of Miami, 96 Okla. 245, 221 Pac. 769, this court said:

"It is well established that a bank cashier or president has no authority to promise a person executing a note to the bank that the maker will not be required to pay the note, and such a promise, if made, is not binding upon the bank."

In the case of Gillis v. First Nat. Bank of Frederick, 47 Okla. 411, 148 Pac. 994, in syllabus paragraph No. 3 thereof, it is announced:

"A bank cashier has no authority, as such, to bind the bank by a promise made to a person executing a note to the bank that the maker will not be required to pay said note."

In the case of First National Bank of Tulsa v. Boxley, 129 Okla. 159, 264 Pac. 184, in paragraphs 3 and 4 of the syllabus, the rule is announced to be:

"3. The maker of a note cannot defend an action thereon by showing an oral agreement made at the time of its execution that he should not be held liable, for the reason that this would violate the rule forbidding the contradiction of the terms of a written instrument by parol evidence.

"4. The maker of a note cannot defend an action thereon by showing that it was executed without benefit to him, under an agreement exempting him from liability, in order to enable the bank to which it was payable to make an additional loan to a customer who had already borrowed to the limit allowed by law, for the reason that, having voluntarily signed the note in order that the examiner might believe it to be an asset of the bank, he ought not to be permitted to deny it that effect."

The rule heretofore announced by this court that no agreement between the maker of a note and the officers of a bank that such maker would not be held liable for the payment of said note, is a most salutary rule of law, for if such were not the case, the stockholders, the depositors, and the public, as well as the bank examiners, would be deceived and misled as to the actual assets of such bank, and where the maker of a note under such conditions becomes a party to such deception, the law closes the avenue of escape to the maker of a note executed under such an agreement.

In view of the record in this case, as well as the law applicable thereto, the judgment of the district court is reversed, with directions to enter judgment for the plaintiff.

MASON, V. C. J., and PHELPS, CLARK, RILEY, and HEFNER, JJ., concur.

HUNT, J., not participating.

Note.—See under (1) 8 C. J. p. 227, §363. (2) 8 C. J. p. 445, §658; anno. 35 A. L. R. 1280; 41 A. L. R. 964; 3 R. C. L. p. 1106; 1 R. C. L. Supp. p. 989, 6 R. C. L. Supp. p. 222; (3) 7 C. J. p. 551, §160; anno. 28 L. R. A. (N. S.) 501; 3 R. C. L. p. 448; 6 R. C. L. Supp. p. 181.