**FLORENCE et al. v. RUSSELL et al.**

No. 13977—Opinion Filed Sept. 30, 1924.

Rehearing Denied Dec. 16, 1924.

**1. Appeal and Error—Waiver of Error—Lack of Argument and Authorities.**

Where no argument is presented or auth-

orities cited in support of assignments of error, the assignments of error will be held to be waived.

**2. Trial—Directed Verdict—When Refused.**

If there is any competent evidence in the record which would reasonably support a verdict in favor of a party against whom a motion for a directed verdict is leveled, it is not error to overrule the motion for a direction.

**3. Appeal and Error—Grouping Refused Instructions in One Assignment of Error.**

"Where several instructions are requested and refused, it is not sufficient to present the refusal of all the requested instructions in a single assignment of error for the purpose of having all such requested instructions reviewed. If any one of such requested instructions is wrong, no error is presented." Muskogee Elec. T. Co. v. Thompson, 100 Okla. 169, 228 Pac. 963.

**4. Trial—Requested Instructions—Refusal.**

It is not error to refuse a requested instruction which submits to the jury issues made by the pleadings rather than issues made by the evidence, if there is a difference; nor is it error to refuse to submit a requested instruction to the jury when the instruction is so drawn that the jury might as easily understand it to be a direction as that it submits a question of fact for their determination.

**5. Depositions—Exclusion of Depositions Taken in Another Case.**

It is not error to exclude the deposition of a witness taken to be used in another case or cases, unless there is an agreement or stipulation made by the opposing parties that it may be used as evidence in the case in which it is offered and excluded.

**6. Trial—Demurrer to Evidence—Failure of Evidence as to Certain Defendants.**

Where plaintiffs bring a suit against several defendants seeking recovery because of fraud alleged to have been perpetrated by defendants upon plaintiffs, it is not error of the trial court to sustain demurrers to the evidence of plaintiffs as to certain of the defendants, where the evidence offered by plaintiffs does not reasonably tend to connect such defendants with the fraud or wrongdoing alleged or proven, or would not reasonably support a verdict against such defendants.

**7. Appeal and Error — Sufficiency of Evidence for Defense—Verdict.**

Where suit is brought for damages because of fraud alleged in the petition and denied in the answer, the issues made by the pleadings present a question of fact to be determined by the jury upon the evidence adduced; and where the jury returns a verdict for the defendant, finding the issues in his favor, the verdict will not be disturbed on appeal because of insufficiency of the evidence where there is competent evidence adduced at the trial by the defendant which reasonably tends to support the verdict.

**8. Judgment Sustained.**

Record examined, and held, that the cause was properly submitted to the jury by the court's instructions: and held, that the verdict for the defendant is reasonably supported by the evidence adduced; and held, that the judgment should be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Garvin County; W. L. Eagleton, Judge.

Action by Jack Florence and A. S. Kelly against Hardee Russell, W. C. Van Hoozer, and J. A. Stokes. Judgment for defendants. Plaintiffs appeal. Affirmed.

The facts out of which this lawsuit grew are about as follows, as appears from the record: In the palmy days of zinc and lead in the Miami country, J. A. Stokes, a resident of Pauls Valley, made a contract with T. P. Turner, who had formerly been a preacher located at Pauls Valley but who had removed to Miami, to buy from him a mining lease on a certain 20 acres of land near Lincolnville in Ottawa county. and agreed to pay therefor the trifling sum of $25,000. Stokes returned to Pauls Valley and presented the matter to certain of his friends there, including Hardee Russell, W. C. Van Hoozer, and R. T. Price. They took into their counsel T. B. Turner, a son of the mine-promoting preacher. This group of men, including L. B. Drake and T. A. Foster got together $10,000 to make a payment on the lease, and organized the Valley Mining Company, a corporation, fixing its capitalization at 150,000 shares at $1 par value. It seems that the young man Turner was made president and J. A. Stokes secretary-treasurer, and Hardee Russell and W. C. Van Hoozer of the board of directors. J A. Stokes transferred the lease to the company. The board of directors, with Drake and Foster, being at the time the only parties interested, set out to themselves 80,000 shares of the capital stock to be divided up among them, with Hardee Russell being the owner of 20,000 shares or one-fourth of the block referred to as promotion stock, and the others got their shares in proportion to the amount they paid into the project. Russell paid $2,500 of the $10,000 which went to T. P. Turner as first payment on the lease. The other 70,000 shares was considered as treasury stock. and the plan was to put on a selling campaign and sell stock out of the 70,000 shares of treasury stock to finish paying for the lease and to develop the lease which was thought to be fabulously rich in zinc and lead. The

sellers of stock were to have as compensation 25 per cent of the proceeds of any sale made, the balance of the proceeds passing into the coffers of the corporation. It seems that about 37,000 shares were sold for par dollars. Among other purchasers were Jack Florence and A. S. Kelly, who purchased 5,000 shares out of the 70,000 shares or minority end of the stock. They paid par dollars for the stock, but were given a rebate of 40 per cent., 15 per cent. of which was made up to the company from other commissions on sales. This purchase of stock seems to have been made after Mr. Florence and some of his neighbors had gone to Miami to inspect the lease and its surroundings, the purchase being made sometime in February or March, 1918. Out of the proceeds of the sale of treasury stock it seems that $15,000 was paid to T. P. Turner as the balance of purchase money on the lease, and the most of what was left was expended for mining equipment and labor, and expense incident to carrying on the company's business.

It seems that Mr. Florence and Mr. Kelly were so well pleased with their investment in mining stock that along in the last days of April, 1918, they were speculating on buying more stock, and the ever-ready stock salesmen were at hand and were offering them some "cheap stock" in another "diggins." Of this Russell, Van Hoozer, and Stokes heard by some means undisclosed, and it seems that Russell, Van Hoozer, and Stokes went to Mr. Florence's home to see him and Kelly about the matter. These men wanted Florence and Kelly to buy more stock in the Valley Mining Company if they were going to invest in more mining stock. It seems that some other salesman had offered Florence and Kelly stock below par in some other company. The matter was talked over and an understanding was had that Stokes, Russell, and Van Hoozer or some of them would endeavor to get stock from either Turner or Drake for Florence and Kelly, and if that could not be done, then Russell should be persuaded to let them have half of his stock. Turner and Drake refused to sell their stock at a cheap price, or below par—in fact, Drake declined to sell and Turner wanted par for his holdings. It appears that Florence and Kelly wanted to get into the mining game on the same level as Russell, Stokes, and Van Hoozer, and the other promoters, but were unwilling to pay par for the stock. They wanted in on the "ground floor" in the Valley Mining Company, where they could stand head and head with the original promoters, and of course none of them realized at that time that there was, figuratively, a basement floor to this mining proposition and the preacher had been standing there when he sold these parties the lease. When it was found that stock could not be procured from either Turner or Drake on terms satisfactory to Florence

and Kelly, then negotiations were started with Hardee Russell to buy half of his stock. It seems that it must have been known that Russell claimed to be the owner of one-fourth of the "promotion stock," or one-fourth of the 80,000 shares set out to the original organizers of the company. Russell wanted $3,600 for half of his holdings, but finally was prevailed upon to part with a half-interest to Florence and Kelly, equal to 10,000 shares, for $2,500, which Florence and Kelly paid to Hardee Russell. This sale was consummated on the 2nd of May, 1918, and shortly thereafter Mr. Florence was made a director of the Valley Mining Company. It seems that no stock had been issued to Russell at the time of this sale, but that after it was consummated a 10 000 share certificate was issued to Russell, and a 5,000 share certificate was issued to Florence and another in like amount was issued to Kelly, and both issues charged in the stock book to the account of Russell. A little later in the year things were not going quite so well in the mining business, and it seems that stock selling was not quite the success that it had been, and the funds of the company were depleted and Mr. Russell advised his associates in a stockholders meeting that he did not care to put more money into the mining business, and later on Mr. Florence and Mr. Kelly concluded that they had been cheated in the purchase of the Russell stock and called upon Mr. Russell to disgorge their $2 500, and upon his refusal to pay back the money this suit followed.

Bowling & Farmer, for plaintiffs in error.

A. F. Pyeatt and Blanton, Osborn & Curtis, for defendants in error.

Opinion by SHACKELFORD, C. The plaintiffs in error were the plaintiffs below, and the defendants in error were the defendants. The parties will be designated herein as plaintiffs and defendants as they appeared in the trial court.

The plaintiffs filed their suit against defendants on the 8th of January, 1921. By their petition they seek to recover the sum of $2.500 with interest at 6 per cent. from May 2, 1918, the principal sum being the amount paid by plaintiffs for their interests in the Valley Mining Company. It is charged in the peition that the defendants—

"Unlawfully, wilfully, falsely and fraudulently represented to plaintiffs***that they were the owners of a one-fourth interest in and to the Valley Mining Company, and a lease***bought***for the purpose of mining, ***which said land was underlaid with rich bodies of zinc ore*** and worth $50,000, and that said lease was paid for in full.***The Valley Mining Company had contracted with the directors to develop said lease*** for an interest in said lease;***that they had a one-fourth interest in the said lease; ***that said lease was not encumbered*** and their interest***was absolute. That

they were selling said one-half interest of their one-fourth interest in same to plaintiffs for the sum of $2,500 and that said corporation was offering the stock for sale at par value for the purpose of carrying out said contract, and that such sums as should be collected from the sale of the stock and the operation of the business would not be used for any other purpose. That plaintiffs had full faith and confidence ***and relied upon said representations and were***induced to purchase***a one-half interest***in and to***the one-fourth interest."

The plaintiffs further alleged, in effect, that no part of the $2,500 paid by them has been expended in development, and that the interest sold to plaintiffs had not been paid for and was valueless, and that defendants did not own the interest purported to be sold and had no authority to sell it, all of which defendants well knew at the time of making representations and sale, and receiving the plaintiffs' money. The prayer is for $2,500, with interest.

The defendants answered the petition by general denial. It seems that sometime before the trial one of the plaintiffs, Mr. Kelly, died, and one of the defendants, Mr. Van Hoozer, also died, and orders of revivor were made. On June 24, 1922, the defendants filed an amended answer denying all the allegations of the petition, and as a second defense they interposed the defense of statutory limitation against the plaintiffs' right to recover, relying upon the two year statute of limitations in actions for fraud.

The case was called for trial on the 27th of June, 1922, whereupon the plaintiffs objected to the amended answer of the defendants. The court held that the amended answer should stand, and offered to continue the case if the plaintiffs were not ready for trial. The plaintiffs excepted to the ruling of the court, and announced ready for trial, and the cause was tried to a jury. At the close of the plaintiffs' evidence the court sustained a demurrer to the evidence, interposed by the defendant Stokes and by the representative of the original defendant Van Hoozer, but overruled the demurrer of the defendant Hardee Russell, who offered evidence in defense. The case was sent to the jury upon the issues made as between the plaintiffs and the defendant Hardee Russell, resulting in a verdict and judgment for the defendant Russell. The plaintiffs prosecute appeal and present the following assignments of error:

(1) Said court erred in overruling the motion of plaintiffs in error for a new trial.

(2) Said court erred in permitting the defendants in error to file an amended answer setting up the statute of limitation.

(3) Said court erred in refusing the peremptory instructions requested by said plaintiffs in error.

(4) Said court erred in refusing to give the requested instructions of the plaintiffs in error numbered 1, 2, 3, 4, 5 and 6.

(5) Said court erred in giving instructions 2, 3, 4 and 5.

(6) Said court erred in refusing to receive in evidence the deposition of A. S. Kelly.

(7) Said court erred in admitting evidence on the part of the defendants in error.

(8) Said court erred in refusing and ruling out competent and legal evidence on the part of the plaintiffs in error.

The assignment of error that the court erred in permitting the defendants to file their amended answer pleading the statute of limitations has not been presented in the argument, and will be held to be waived under the repeated holdings of this court.

Plaintiffs complain that the court refused to give to the jury the requested peremptory instruction. At the close of the evidence and upon the announcement of rest by both plaintiffs and defendant, the plaintiffs moved the court to direct the jury to return a verdict for the plaintiffs for the amount sued for. The motion for a direction was overruled, exception saved, and the ruling is urged as error. This motion raised the question of the sufficiency of the evidence of the defendant Russell to make out a defense. The court should not direct a verdict for the plaintiff unless the proof, and legal and legitimate inferences to be drawn therefrom, are all in his favor, as a general rule. It is charged in the petition that the defendants by way of inducement represented that they owned a one-fourth interest in the lease and that the lease had been paid for, and there were no emcumbrances thereon, and that such representations were false, made to deceive, and did deceive the plaintiffs into buying one-half of the one-fourth claimed by the defendants. It is further charged that the defendants represented to plaintiffs that the proceeds of the sale would be used in the development of the lease, and that this had not been done. We have been unable to find any satisfactory evidence in the record that Mr. Russell ever represented to plaintiffs that he owned a one-fourth interest in the lease. Nor have we been able to find that the plaintiffs proved that Mr. Russell represented that the lease had been paid for, by way of inducing the plaintiffs to buy an interest in

the property such as they bought at the time the $2,500 was paid, which they now seek to recover. And, even if the testimony of the plaintiffs could be said to tend to prove that such representations were made or assented to by Russell, the evidence on the part of the defendant tended to show that the lease was paid for at the time this purchase was made by plaintiffs. Neither do we find any proof on the part of the plaintiffs that Russell represented to plaintiffs that the money paid to him by them would be used for development of the mine. It is apparent from this record that plaintiffs knew, at the time they made the trade with Russell in which they paid him the $2,500, that they were getting for their money one-half of the stock owned or claimed by Russell, and that they were not dealing with the corporation, and Mr. Florence testified that Russell never did tell him that he, (Russell) would use the money in developing the mine. Mr. Florence says he never asked Russell about it. It is evident that at the time the deal was made Florence recognized the fact that whatever money Russell got for this block of stock belonged to Russell, and it was none of his (Florence's) business what Russell did with the money. The proof offered on the part of the defendant Russell tends strongly to prove that he never made any representations to the plaintiffs that he owned any interest in the lease aside from the stock he held, and that the plaintiffs sought him out and induced him to sell one-half of his stock when he was reluctant to do it, but did do it because plaintiffs had been unable to buy from Turner or from Drake, other promoters, and the plaintiffs were anxious to get in "on the ground floor," and that he never at any time told the plaintiffs that he would use the money paid for this block of stock in developing the mine. This being the state of case made by the evidence, it was not error for the trial court to overrule the motion made by the plaintiffs to direct a verdict against Russell. The best that could be said for the plaintiffs is that that they had made sufficient showing to go to the jury.

The plaintiffs complain that the court erred in refusing to give requested instructions of the plaintiffs numbered 1, 2, 3, 4, 5 and 6. This assignment of error presented in the petition in error, is, no doubt, intended to follow the tenth assignment of error in the motion for a new trial, which is "error of law in refusing to give the requested instructions of the plaintiffs numbered 1, 2, 3, 4, 5, and 6."

Instruction No. 1, of this group of instructions is as follows:

"Gentlemen of the jury, you are instructed that for the plaintiffs to recover in this case it is not necessary that they should show that all the representations charged were made by the defendants, or, if made, they were all untrue; it is sufficient if the jury find from the evidence, that some of the representations were made as charged, that they were untrue and known to be so at the time by the defendants, or that they had no good reason to suppose them to be true; that they were calculated to deceive an ordinary cautious person and were intended by the defendants to deceive and defraud the plaintiff—That without such fraud and fraudulent representations, the plaintiffs would not have bought the property in controversy and that the plaintiffs have been damaged by the fraudulent acts of the defendants."

This instruction is erroneous for reasons, some of which are as follows: First. It follows the pleading of the plaintiffs instead of the evidence of the plaintiffs. Instructions to the jury are supposed to submit issues made by evidence rather than issues made by the pleadings, if the issues are different. The plaintiffs, by their petition, claim to have been fraudulently induced to buy a one-half interest in the leasehold. It does not appear that any such contention was presented by the evidence. The evidence conclusively shows that the plaintiff Jack Florence knew that he was buying privately owned corporation stock from Mr. Russell, as distinguished from an interest in the lease. He said: "When I bought the last stock there was a great deal said about it, more stock because we had talked that over a dozen times or 25 times, I reckon. I don't remember whether there was anything said when I bought this last stock." The instruction contains the language "the plaintiffs would not have bought the property" when there is no evidence to show that they bought the property or any interest therein as distinguished from the stock owned by Russell, and would have been misleading to the jury. Second. As the instruction appears in the case-made, it, in effect, tells the jury that if certain things are found by them "that without such fraud and fraudulent representations plaintiffs would not have bought the property in controversy and that the plaintiffs have been damaged by the fraudulent acts of the defendants," and amounts to advising the jury that a fraud has been committed, that plaintiffs would not have purchased except for the fraudulent representations, and that damage has been done. In the form in which the instruction is presented the jury could as easily and as well say that the last clause refers to "you are instructed" as to say that it re-

fers to the language "if the jury find from the evidence." This statement is based upon the assumption that the instruction is copied into the case-made wording, capitalization, and punctuation as it was requested. The quoted statement could easily have been misunderstood by the jury as a direction that they should find that plaintiffs had been damaged. If such was intended by the instruction, the instruction would be erroneous for the reason that it would be an invasion of the province of the jury. If such was not intended by it, the capitalization and punctuation are unhappily arranged. Third. The issues made by the evidence were well covered by the court's instructions. For any one or all of these reasons the requested instruction was properly refused.

In Muskogee Electric Traction Co. v. Mattie Thompson, 100 Okla. 169, 228 Pac. 963, this court held:

"Where several instructions are requested and refused, it is not sufficient to present the refusal of all the requested instructions in a single assignment of error for the purpose of having all such requested instructions reviewed. If any one of such requested instructions is wrong, no error is presented."

The general rule is announced in 3 Corpus Juris, 1376, section 1525, where it is said:

"It is a rule of almost universal application that an assignment of error directed against a charge embodying several propositions as a whole, or against the giving or refusing of a group of instructions embodying distinct propositions, is insufficient. The portion of the charge complained of, or the instructions, the giving or refusing of which is claimed to be error, should be distinctly designated or pointed out. Single assignments of error should not embrace more than one proposition, and on a violation of the rule the assignment will usually be disregarded."

If any one of the group of requested instructions is wrong, no error is presented by the assignment. We think, because of the first and second reasons pointed out, requested instruction No. 1 was wrong.

The plaintiffs assign the giving of instructions 2, 3, 4, and 5, of the court's instructions as error. However, this assignment of error has not been presented in the argument, and will be treated as having been waived. Nevertheless we have examined the instructions complained of. They seem to be correct declarations of law applicable to the testimony adduced at the trial, and were not erroneous.

The plaintiffs complain that the court erred in excluding the deposition of A. S. Kelly. It seems that the deposition of Kelly was taken on the 15th of January, 1921. This suit was filed on the 8th of January, 1921. The deposition was taken in a case wherein Jack Florence was plaintiff and the Valley Mining Company et al. were defendants. The notice given of the taking notifies the defendants that the deposition so to be taken will be used in evidence in cases numbered 4566, 4568, 4569, and 3780, pending in the district court of Garvin county, in all of which cases the Valley Mining Company is a party defendant. At the home of Arthur Kelly, where the deposition was taken, it was agreed, among other things, "that a copy thereof shall be made for each of the above cases," which are numbered as above, "and the same shall be introduced and read in evidence on behalf of the plaintiff without further notice being given." This suit is numbered 4567 in the district court of Garvin county, and is not a case against the Valley Mining Company, and is not one of the numbers plaintiff included in the notice or the agreement. The deposition was objected to by defendant for the reason that it was not taken to be used in this case. The plaintiffs then offered to prove that the agreement was to have covered this case also, and this offer was objected to for the reason that it was an attempt to vary the terms of a written agreement by parol evidence. There was no offer to show that this case was left out of the stipulation by mistake, inadvertence, or by the wrong-doing of anybody. Mr. Florence was the only witness examined about the matter, and the question was asked him, "Do you know who prepared this original agreement that is attached to these depositions?" An objection to this question was sustained, and the attorney for Mr. Florence then stated that he expected Mr. Florence to testify "that he does not know." The agreement shows to have been signed by H. M. Carr for the plaintiff, and by A. F. Pyeatt for the defendants. We think the showing made or offered to be made was insufficient to overcome the effect of the notice and the original stipulation as to what cases the deposition might be used in. To exclude the deposition under the circumstances presented here was not error which should work a reversal of the judgment. However this may be, we have examined the deposition of Mr. Kelly. There seems to be little or nothing said by him about any misrepresentations or inducement offered by Hardee Russell which lead to his joining Jack Florence in the purchase of one-half of the promotion stock held by

Russell. The burden of his complaint in the deposition is that he was overreached by some of them when he bought his stock from the company, and has little or no bearing upon the transaction involved in this lawsuit.

The other two assignments of error are not argued in the briefs, and are therefore held to be waived.

The plaintiffs complain in their brief that the court, at the close of the plaintiffs' evidence, sustained a demurrer to their testimony interposed by the defendants J. A. Stokes and the representative of the defendant W. C. Van Hoozer. It appears that such ruling of the court has not been assigned as error either in the motion for a new trial or in the petition in error. Nevertheless, we have carefully considered the evidence offered by the plaintiffs to connect Stokes and Van Hoozer with the sale of stock made by Russell to the plaintiffs. It was shown by the plaintiffs that the transaction of which they complain was had with Russell. Stokes and Van Hoozer had no interest in the block of mining stock bought by the plaintiffs from Russell. It was not shown by the plaintiffs that Stokes and Van Hoozer or either of them ever profited by the transaction in any way. There is no evidence in the record to show that plaintiffs were induced to buy the stock from Russell by reason of false or fraudulent representations made by Stokes or Van Hoozer. Practically all of the testimony with reference to Stokes and Van Hoozer was concerning acts and statements of theirs or knowledge which they possessed or information received by them prior to the time plaintiffs bought stock from the Valley Mining Company. Very little was ever said or done by Stokes or Van Hoozer after that and before or at the time plaintiffs bought stock from Russell. The testimony seems to show that Stokes and Van Hoozer went with Russell to see the plaintiffs, but the visit was for the purpose of selling them more stock in the Valley Mining Company. But, it was understood that if plaintiffs bought company stock, or treasury stock, that they must pay par therefor, and plaintiffs were looking for cheap stock. And, it seems that Stokes or Van Hoozer agreed with the plaintiffs that they would help plaintiffs to induce Russell to sell some of his stock in case they could not buy from Turner or Drake, two other of the promoters There is no testimony tending to show that Stokes or Van Hoozer represented to the plaintiffs that they, with Russell, owned a one-fourth interest in the lease or that the lease was paid for, or that Russell would put the proceeds of this stock sale into development, for the purpose of inducing the plaintiffs to buy the stock from Russell. The plaintiffs had utterly failed to sustain the allegations of their petition as against Stokes and Van Hoozer. Hence, the court did not commit error in sustaining the demurrers interposed by Stokes and Van Hoozer to the plaintiff's evidence.

The great burden of the plaintiffs' contention seems to be that they should be entitled to recover from Russell the $2,500 paid him by them for stock, because Russell did not pay the company for the stock par value in money, property, or other thing of value. It seems from the record that the promoters put certain money in to make a payment on the lease, and had then turned the lease to the company and took in the deal this stock known and referred to as promotion stock, of which the plaintiffs bought a part from Russell. It seems that the plaintiffs well knew at the time they purchased this block of stock that they were buying promotion stock. They must have known that they were getting substantially 10,000 shares of the stock, and necessarily knew that they were procuring the stock for 25 cents on the dollar, and much below par. Now, they insist that they should have their money back because Russell had not paid par dollars for the stock, whereas, in their petition, they claim the right to recover their money because the defendants falsely and fraudulently represented that they owned one-fourth of the lease, and that the money invested would be used in development of the lease. The right to recover because of the failure of defendants to pay full value for the stock bought by plaintiffs is not within the issues made by the pleadings. The plaintiffs cite cases which they insist support their contention that they are entitled to recover against Russell because he did not pay par dollars for the stock sold them. They cite Bentley v. Zelma Oil Company, 76 Okla. 116, 184 Pac. 131. That suit was brought by certain minority stockholders of the Zelma Oil Company for the purpose of canceling a certain well drilling contract and an assignment of oil and gas lease because of fraud. It was said by the court that:

"Where the officers and directors of a corporation refuse to bring a suit to cancel conveyances of corporate property, fraudulently made by such officers and directors, dissenting stockholders in such case may maintain an action for the cancellation of such conveyance."

That was a very different matter to what we have here. If these plaintiffs had brought suit against Russell, Stokes, and Van Hoozer to cancel a fraudulent and ficticious issue to

them of corporation stock, the case cited might have some bearing; but such is not the case.

In Harn v. Smith et al., 85 Okla. 137, 204 Pac. 642, cited by the plaintiffs, suit was brought on a promissory note and to foreclose a mortgage given for certain stock transferred by the corporation, and the question presented and considered was whether or not the note and mortgage constituted value paid for the stock as between the corporation and the maker of the instruments.

In Ettlinger v. Collins (Ariz.) 213 Pac. 1002, cited by plaintiffs, there was involved a transfer of stock which had previously been declared void.

In Lee v. Cameron, 67 Okla. 80, 169 Pac. 17, cited by plaintiffs, we find a suit brought by a stockholder in a corporation to cancel shares of stock wrongfully and ficticiously issued by the corporation and one of its directors.

It seems to us that it is easy to see that these cases have little or no bearing in the case under consideration, and are certainly not controlling here. In this case the plaintiffs wanted into the mining deal on the same level with Russell, Stokes, and Van Hoozer, and the other promoters. They wanted to get "in out of the cold" by getting in on the "ground floor." They wanted "cheap stock." They bought from Russell at 25 cents on the dollar. And, so far as we can see, it was done knowingly. The evidence rather indicates that Russell strongly believed in the Valley Mining Company, and reluctantly sold some of his own holdings because the plaintiffs insisted upon it.

The plaintiffs relied for a recovery upon the alleged fraud perpetrated by the defendants upon them. They were not seeking to cancel a ficticious and fraudulent issue of stock to Stokes, Van Hoozer and Russell, nor were they seeking to recover because of any fraud that the defendants had perpetrated upon the company by having stock issued to them which they had not paid for. They were not seeking to right a wrong done the company and themselves and other minority stockholders similarly situated. The whole matter presented was a private, personel affair between the plaintiffs and the defendants, over the fairness or lack thereof in a purchase and sale of stock claimed by Russell. No fraud was shown by plaintiffs to have been practiced upon them by Stokes or Van Hoozer. If the evidence tended to show any fraud practiced upon the plaintiffs by Russell, it also tended to show

that the deal was made fairly and honestly on the part of Russell; thus producing a conflict in the evidence upon the question of fraud. The court submitted the conflicting evidence to the jury as between plaintiff and Russell by appropriate instructions. The jury resolved the conflict in favor of Russell. The record supports the verdict. When the evidence adduced at the trial reasonably supports the conclusion reached by the jury as expressed in their verdict, this court is not at liberty to overturn the conclusion of the jury upon a question of fact submitted by proper instructions covering the conflicting theories growing out of the evidence of the contending parties.

Upon the record before us, we conclude that the verdict and judgment of the trial court should be upheld; and therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.