## NOLAN v. MATHIS, Adm'r.

No. 18869. Opinion Filed Oct. 9, 1928.

Rehearing Denied Dec. 24, 1928.

W. H. C. Taylor, J. T. Johnson, and Walter Marlin, for plaintiff in error.

Drennan & Drennan and Sam P. Ridings, for defendant in error.

BENNETT, C. This was a civil action instituted by Patrick Nolan against Harry W. Mathis, administrator of the estate of John Nolan, deceased, and others, in district court of Grant county, Okla. The defendants, other than said administrator, are the heirs of John Nolan, deceased.

The purpose of the action was to quiet title to certain lands in Grant county in plaintiff, which were alleged by him to have been acquired by parol gift from a deceased brother, John Nolan, shortly before his death.

A rather full statement of the general facts and the pleadings is set out in a similar cause, No. 18703, entitled Michael Nolan, Plaintiff in Error, v. Harry W. Mathis, Administrator of the Estate of John Nolan, Deceased, et al., Defendants in Error, 134 Okla. 70, 272 Pac. 857, decided on October 2, 1928, by this court, to which statement of facts and the record reference is here made.

It will be observed from that statement of facts: That Michael, Patrick, and Thomas Nolan claimed title to certain real and personal property by parol gift from John Nolan, deceased, made just prior to his death, and that, shortly after his decease, each of said parties brought a separate action in the proper court and county to quiet the title in him to the particular land claimed by him under said gift; that each of said brothers, represented by the same counsel both in the trial court and in this court, filed petitions almost identical in word and substance; that the same counsel represented all the defendants other than the two of the three brothers who were made parties defendant in each of said suits. Identical answers were filed, and substantially the same witnesses and the same evidence were offered and introduced in each case. It is quite true that the plaintiff in this case offered in evidence a number of depositions which were excluded by the court for the reason that most, if not all, of these depositions were taken before the case at bar was filed. None of them were taken in this case, nor filed in this case, nor was there any stipulation entered into for their consideration in this case. The parties were

different. Florence v. Russell, 105 Okla. 20, 231 Pac. 301.

Section 627, C. O. S. 1921, reads as follows:

"Every deposition intended to be read in evidence on the trial, must be filed at least one day before the day of trial."

Section 618, Id., provides for the service of notice of taking said deposition, specifying the action, the name of the court, and other necessary matter be set out, and section 623, Id., is as follows:

"When a deposition has been once taken, it may be read in any stage of the same action or proceeding, or in any other action or proceeding upon the same matter between the same parties, subject, however, to all such exceptions as may be taken thereto under the provisions of this article."

But, at any rate, the exclusion of same would not, in any event, in our view of the case, constitute reversible error, for we have, upon a similar case, pleadings and proof, including the omitted depositions, held in the case of Michael Nolan v. Harry W. Mathis, Administrator, supra, upon a like demurrer to the evidence, that the plaintiff could not recover. A fortiori, the plaintiff in the case at bar, with less evidence, should not receive a more favorable ruling.

We shall now point out what appears to us to be the only divergence in pleading or proof between the case at bar and the Michael Nolan Case referred to above. Patrick, perhaps in order to show that John would be the more ready to make such gift as claimed, alleged (but the evidence does not sustain him) that he helped John plant his crops in 1894, 1895, and 1896, and helped provision his stock, and that during said period gave his brother at least $600. There is no similar allegation in Michael's petition, but there is one which bears some semblance of similarity—Michael alleges that a part of the real estate c'aimed by him under the oral gift was partially paid for out of money belonging to the copartnership, in which Michael and John were equally interested, more than 15 years ago. In the petition in the case at bar, the plaintiff alleges that John Nolan. deceased, in December, 1923, used these words to plaintiff:

"Here is the key to the house on my homestead: take it and take my homestead and do what you can with it; I give it to you for what you have done for me in the past 30 years, and if in the future I should need help. I want you to help me as long as I live"

—and that the plaintiff thereupon went into possession of said premises under the gift. These are substantially the words used in the petition in Michael's case, except as to the key, and, for that matter, also in the alleged gift made to ·Thomas. The petition further sets out another parol gift of the same real estate made to plaintiff by decedent on February 24, 1924, and, also, on the 5th of April of the same year, these being the identical dates and the identical conversations relied upon by Michael in his suit, and also by Thomas in his suit against the same defendants. Plaintiff sets out that John gave him this real estate:

"(a) Because of blood relationship;

"(b) Because of the long continued and intimate association between plaintiff and his deceased brother lasting through a period of at least 30 years. * * *

"(c) On account of the money favors and benefits conferred by this plaintiff upon his said brother, John Nolan. * * *

"(d) For the reason that the plaintiff herein devoted his time, his energy, and his money in an effort to restore the health of his said brother, John Nolan. * * *

"(e) For the reason that this plaintiff gave to his said brother, John Nolan, several hundred dollars in money which had never been repaid. * * *"

Since these transactions, therefore, are predicated upon the same alleged facts, upon the same alleged parol gifts, made by the same alleged donor, at the same time and place, and in the same conversations and upon the same considerations, for the same purpose and between the same parties, and to the same donees, we see no reason why the same rules of law should not be applied. We have held in Michael Nolan's case, that his claims (1) were based on an oral gift of real estate; (2) that in order to complete the gift, there must be possession taken under the gift during the lifetime of the donor; (3) lasting and permanent improvements must have been made upon such real estate within the lifetime of the donor, so as to make it, in effect, a fraud upon the party making such improvements to hold that the promise should not be performed.

And upon consideration of the proof in that case, the trial court held that no such permanent and lasting improvements had been made upon the premises; that the same were negligible, and that the plaintiff, therefore, had not made out his case. In the case at bar, the only improvements disclosed by the evidence are the setting of 12 or 14 fence posts and the driving of a few staples in a wire fence. So that we are warranted in dismissing the question of improvements altogether. Even the time of making these improvements is by no means clearly fixed, but if it were, they are of trivial value. It is significant that John Nolan, if the proof is to be accepted at face, made three distinct separate parol gifts of the homestead to Patrick. This, to say the least, is unusual.

We have likewise held in Michael's case, under similar if not identical pleadings, that the suit was predicated upon the theory of an oral gift, and not upon a contract made between the brothers that they would care for John during his lifetime, provided he would give them his estate, and the same holding is proper in the case at bar. We drew attention, too, in Michael's case, to the fact that the services rendered were not of that peculiar kind and quality and of that extent as would make it a fraud upon Michael or inequitable to deny to him the specific property, the subject of the alleged gift. We indicated also that such services were those ordinarily performed by kinsmen for their stricken relatives without compensation, and that such services were not shown to be repulsive, long continued, or exacting, and that there was nothing about the services they performed for John Nolan, which, under the circumstances, could not be measurably compensated in money. The same is even more true of the case at bar, for it appears clearly by all the testimony that Michael hired nurses and Amelia performed most of the services for the sick man, and that Patrick was a man of family and only occasionally and for short periods did any service whatsoever for his brother; that he maintained his home where it had always been maintained, and there is no proof that any of his affairs suffered on account of the few days given to John in his distress.

We find nothing in the evidence to substantiate the allegation in the pleadings that Patrick advanced to John $600 in money 34 or 35 years ago. While equity does not allow itself to be hamstrung by the statute of limitations, it should not and does not look with favor upon claims made against a decedent so long after the alleged claim originated as to make proof of the circumstances practically impossible.

Finally, it is well to observe that, on the 6th day of September, 1924, Patrick Nolan, who claimed the land in controversy, under

a parol gift from the owner, **entered into a written lease with the administrator of such owner**, for a year, and agreed to pay therefor, "one-third of the grain delivered to market all expenses paid," and acknowledged the same before a notary public on the same day in Grant county. This was only four months after the alleged oral gift of the land. In order to avoid the force of this significant transaction, he says that he signed it to keep out of trouble or argument with the administrator, because the administrator told him that he could not go on the land until after he signed the lease contract. The plaintiff is not a meek and servile man, as is shown by many parts of his testimony. For example, when questioned about this very matter, he used such offensive and profane language in court as to receive a threat of imprisonment from the judge, so that his plea of duress on the part of the administrator is, we think, overworked.

We have read the record and the evidence in this case, and have carefully weighed and considered the same by reason whereof, together with the holdings, findings and authorities relied upon in the case of Michael Nolan v. Harry W. Mathis, Administrator, et al., No. 18703, supra, we hold that the judgment of the trial court is properly supported by the evidence, and is not against the clear weight thereof, and the same is therefore affirmed.

TEEHEE, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.